Gerald M. SULLIVAN, not individually, but as Trustee of: Plumbers' Pension Fund, Local 130, U.A.; Plumbers' Welfare Fund, Local 130, U.A.; The Trust Fund for Apprentice and Journeymen Education Training, Local 130, U.A.; and Chicago Journeymen Plumbers Local Union 130, U.A. Group Legal Services Plan Fund, Plumbing Council of Chicagoland and Plumbing Contractors Association of Chicago & Cook County, Plaintiffs–Appellees,

v.

Andrew A. GILCHRIST and Raymond Traynor, Defendants–Appellants.

Nos. 95–2460, 95–2461.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 10, 1996.

Decided June 25, 1996.

Rehearing Denied Aug. 28, 1996.

Paul V. Esposito (argued), Douglas A. Lindsay and John William Loseman, Lewis, Overbeck & Furman, Chicago, IL, for Plaintiffs-Appellees.

Keith J. Kulie (argued), Frank R. Wiemerslage, Park Ridge, IL, for Defendant-Appellant Andrew A. Gilchrist.

Anthony J. Nasharr, III (argued), Foran, Nasharr & O'Toole, Chicago, IL, for Defendant-Appellant Raymond Traynor.

Before BAUER, FLAUM, and RIPPLE, Circuit Judges.

BAUER, Circuit Judge.

The plaintiffs brought this action to enforce an arbitration award of the Joint Arbitration Board of the Plumbing Contractors Association of Chicago & Cook County and the Chicago Journeymen Plumbers Local Union 130, N.A. ("JAB") against two plumbing contractors, Andrew A. Gilchrist and Raymond Traynor. Gilchrist and Traynor do not contest their liability under the arbitration award directly. Rather, they raise several procedural defenses concerning the JAB's jurisdiction, the notice they received—or failed to receive—of the arbitration hearing and award, and the collective bargaining agreement's applicability after Gilchrist purportedly had retired from the plumbing business.

The district court granted summary judgment for the plaintiffs with respect to both defendants because they failed to contest the arbitration award within the 90–day limitation prescribed by the Illinois Arbitration Act, 710 ILCS 5/12(b). However, the district court later vacated its grant of summary judgment with respect to Gilchrist. At a subsequent hearing, Gilchrist presented evidence that 1) he had not received a copy of the JAB decision or award prior to receiving service of the plaintiffs' complaint, and 2) any JAB decision against him would be void because he had no collective bargaining agreement with the union. Following a bench trial, the district court entered judgment in favor of the plaintiffs. Because we agree with the district court's dispositions as to both defendants, we affirm.

## BACKGROUND

As plumbing contractors and sole proprietors, Gilchrist and Traynor perceive themselves as figurative Davids suffering at the hands of a pension fund Goliath. For 82 years, Andrew Gilchrist has lived at 513 Madison Street in Oak Park, Illinois. From approximately 1956 to at least July 31, 1985, Gilchrist operated a plumbing contractor business out of a hardware store at the same address. To Gilchrist, July 31, 1985 is a pivotal date in this litigation, for on that date he claims to have ceased doing business as a plumbing contractor. On August 1, Raymond Traynor took over and, to preserve the continuity of the enterprise, commenced a sole proprietorship doing business as "Gilchrist–Traynor Plumbing and Piping."

Throughout the time that he was in the plumbing business, Gilchrist entered a series of collective bargaining agreements with Local 130. At the arbitration hearing, the plaintiffs produced twelve agreements covering the period between June 1, 1965 and July 31, 1985. In addition, the plaintiffs produced two agreements that Gilchrist entered after he sold his business to Traynor in July 1985. The first agreement covered June 1, 1986 through May 31, 1988, and the second covered June 1, 1988 through May 31, 1990. Despite Gilchrist's purported retirement, each of the agreements bore his signature, and each contained a provision binding both the employer and its successors to make the appropriate employee benefit contributions. Another provision automatically renewed the agreement for successive periods unless either party gave notice that it intended to modify or terminate the agreement.

Following the sale of his business in July 1985, Gilchrist directed the postal carriers to deliver plumbing related mail to 511 Madison Street, a garage that Traynor leased from Gilchrist. However, if he received any mail at 513 Madison, Gilchrist routinely forwarded it to Traynor. In November 1989, Traynor moved to 641 Madison Street, but continued to receive mail addressed to 513 Madison. Throughout this time, the union sent blank contribution reports to Gilchrist at 513 Madison, and Traynor continued to file the reports with the union. All told, 79 reports were on file for the five-year period between 1986 and 1991.

In 1991, the union conducted an audit of the benefit contributions that Gilchrist–Traynor had made to the union pension fund. Following the audit, and pursuant to the collective bargaining agreement, the union initiated an arbitration hearing to collect the unpaid employee benefit contributions. Both Gilchrist and Traynor attended the arbitration proceeding on May 8, 1992, and each was represented by counsel. On June 3, 1992, the JAB arbitrator found Gilchrist liable to the union as a signatory to the collective bargaining agreement and Traynor liable as Gilchrist's successor. The arbitration award, which covered the period from January 1, 1987 through June 30, 1991, ordered the defendants to pay $24,061.45 in delinquent contributions, with interest accruing at a rate of 1.5 percent per month.

The JAB sent multiple copies of its decision to Gilchrist and Traynor. Robert Walsh, secretary of the JAB, addressed each of the letters to Mr. Andrew Gilchrist, Mr. Raymond Traynor, and Gilchrist–Traynor Plumbing Contractor at 513 Madison Street. Although one certified mailing to this address was returned as "refused," the copies sent by regular mail were not returned. Despite the repeated mailings, the defendants never satisfied the judgment. Instead, the union filed suit in district court. By the time the district court entered judgment for the plaintiffs, the claim, including interest, was worth $66,277.05.

## ANALYSIS

■ This case arises under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(e)(1), to enforce the JAB's arbitration award. Section 301 of the Labor Management Relations Act does not identify a statute of limitations to apply to a challenge to an arbitration decision, so we turn to the statute of limitations for a comparable action in the forum state. *Teamsters Local No. 579 v. B & M Transit, Inc.*, 882 F.2d 274, 276 (7th Cir.1989). In Illinois, the appropriate time period for challenging an arbitration award is the 90–day limitations period prescribed by the Illinois Arbitration Act, 710 ILCS 5/12(b). *See Sullivan v. Lemoncello*, 36 F.3d 676, 681 (7th Cir.1994).

■ The district court granted summary judgment for the plaintiffs because Gilchrist and Traynor had not challenged the arbitration award within the 90–day period. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We review a decision to grant summary judgment *de novo*, applying the same standard as the district court and drawing all inferences in favor of the non-moving party.

■ With respect to defendant Gilchrist, the district court vacated its initial grant of summary judgment for the plaintiffs because an issue of fact existed as to when Gilchrist received a copy of the arbitration award. Following a bench trial, the district court again entered judgment in favor of the plaintiffs. We review the district court's conclusions of law *de novo*, but will reverse its findings of fact only if they are clearly erroneous.

Because of the different procedural postures leading to the two appeals, we will treat the arguments raised by the respective defendants separately. We turn first to Traynor's argument.

### A. Raymond Traynor

■ Although phrased in the language of subject matter jurisdiction and statutes of limitations, each defendant's appeal essentially attempts to blame the other for the unpaid

benefit contributions. Traynor's principal contention is that the JAB never had jurisdiction over him because he never signed a collective bargaining agreement (or any contract, for that matter) consenting to arbitration. Following this line of argument, Traynor asserts that the arbitration award against him is a nullity, and that therefore the 90–day limitation period to challenge the award never should have started.

Traynor's claim is undercut by the fact that he submitted more than 70 contribution reports to the union over the relevant five-year period. Moreover, Traynor's argument also ignores the successor liability provisions of the collective bargaining agreements that Gilchrist entered both before and after he sold the business to Traynor. But we need not even analyze the terms of the collective bargaining agreement, for it is undisputed that Traynor did nothing to challenge the arbitration award within 90 days of receiving it.

■ A failure to challenge an arbitration award within the applicable limitations period renders the award final. *International Union of Operating Engineers, Local 150, AFL–CIO v. Centor Contractors, Inc.,* 831 F.2d 1309, 1311 (7th Cir.1987). Where the relief sought is to nullify the arbitration award, the only avenue for such relief is a timely suit to vacate. *Id.* For example, in *Plumbers Pension Fund, Local 130 v. Domas Mechanical Contractors, Inc.,* 778 F.2d 1266 (7th Cir.1985), the employer's defense to an enforcement suit also involved an attack on the validity of an arbitration award. We held that "a defendant's failure to move to vacate [an] arbitration award within the prescribed time period for such a motion precludes it from seeking affirmative relief in a subsequent action to enforce the award." *Id.* at 1268, *quoting Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union No. 135 v. Jefferson Trucking Co.,* 628 F.2d 1023, 1025 (7th Cir.1980), *cert. denied,* 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981). This is precisely the type of relief that Traynor seeks, and as in *Domas,* Traynor should have moved to vacate the award. *See also Sullivan v. Lemoncello,* 36 F.3d 676, 680 (7th Cir.1994).

Traynor attempts to distinguish *Domas* and *Lemoncello* by calling into question the very existence of a collective bargaining agreement. He claims that he has not waived this "jurisdictional" objection because he appeared before the JAB "solely and unequivocally" to contest its jurisdiction. The record is clear, however, that Traynor was well aware of the JAB decision, and that he did nothing within the subsequent 90–day period to vacate the award. Like in *Lemoncello,* Traynor does not quarrel with the subject matter jurisdiction of the district court, he challenges only the arbitrator's authority under the arbitration agreement. *See Lemoncello,* 36 F.3d at 682.

■ Traynor's second argument is that the district court erred in denying him the opportunity to take discovery to establish both the lack of a collective bargaining agreement and Traynor's appearance at the JAB hearing to contest jurisdiction. We review a district court's decision to limit discovery for abuse of discretion. *See Griffin v. City of Milwaukee,* 74 F.3d 824, 829 (7th Cir.1996). Traynor's argument misses the point because the sole issue was whether Traynor had challenged the arbitration award within the statutory limitations period. Neither the existence and scope of the collective bargaining agreement nor the substance of Traynor's appearance before the JAB were relevant to this inquiry. The district court properly exercised its discretion in limiting discovery.

■ Lastly, Traynor argues that the district court erred in assessing statutory interest on the arbitration award during the course of this litigation. However, ERISA provides that the district court *shall* award interest on unpaid contributions in any action brought by a fiduciary for or on behalf of a plan to enforce section 1145 in which a judgment in favor of the plan is awarded. 29 U.S.C. § 1132(g)(2)(B) (emphasis added). The district court properly assessed statutory interest.

**B. Andrew Gilchrist**

■ Just as Traynor has tried to shift liability to Gilchrist due to the signatures on the collective bargaining agreements, Gilchrist attempts to shift liability back to Traynor. Notwithstanding the fact that he continued to sign collective bargaining

agreements after selling the business to Traynor (signatures which he now contests), Gilchrist claims that he was out of the plumbing business on July 31, 1985 and therefore could not be obligated to make benefit contributions. Gilchrist further claims that he was completely unaware of the unpaid benefit contributions, and that he attended the JAB hearing only because Traynor asked him to do so.

■ To the extent that these claims represent a challenge to the merits of the arbitration award, Gilchrist also is bound by the 90–day limitations period. *See, e.g., Centor,* 831 F.2d at 1311; *Domas,* 778 F.2d at 1268. For this reason, the district court also initially entered summary judgment against Gilchrist. However, Gilchrist later produced evidence of an issue of fact pertaining to his receipt of the JAB decision. The district court held a trial on the matter, and Gilchrist now contends that several of the district court's findings of fact were clearly erroneous.

In his effort to prove that he never received notice of the JAB decision and award, Gilchrist emphasized the following facts. First, all of the relevant mail was addressed to "Gilchrist–Traynor Plumbing Contractor" rather than to Andrew Gilchrist. Second, Gilchrist offered testimony from Oak Park Postmaster Ronald H. Pusateri that a mail carrier familiar with the information on a letter would forward mail to the correct destination irrespective of the address on the envelope. And third, Gilchrist referred to Section 153.42 of the Domestic Mail Manual, which requires mail addressed to an organizational official by title or by organization name to be delivered to the organization if it so directs.

The JAB sent *seven* copies of its decision, yet Gilchrist insists that taken together, this evidence demonstrates that the JAB may have sent the arbitration decision to him, but that he never received it because the post office would have forwarded plumbing mail directly to Traynor. Gilchrist would have us believe that postal carriers delivered each of the seven letters, all of which were addressed to 513 Madison Street, to an address other than the one on the envelope. Moreover, Gilchrist's argument ignores Postmaster Pusateri's testimony that a letter carrier would deliver mail only to the address on the envelope unless a forwarding address had been requested in writing. Postal Regulation 153.31 provides that "jointly addressed mail is delivered as addressed by the sender as long as one of the addressees can receive it there."

■ After reviewing the evidence, the district court concluded that one, if not all, of the copies of the JAB award were delivered to 513 Madison Street, and that Gilchrist either ignored the mail or relied upon Traynor to attend to it. Our task is not to reweigh the evidence or determine the credibility of the witnesses. *See Blakley v. Amax Coal Co.,* 54 F.3d 1313, 1321–22 (7th Cir. 1995). We defer to the district court's findings of fact, and see no reason to disturb them here.

## CONCLUSION

For the foregoing reasons, the district court's entry of judgment for the plaintiffs with regard to both Gilchrist and Traynor is

AFFIRMED.