**INTERNATIONAL UNION OF OPER-
ATING ENGINEERS, LOCAL 150,
AFL–CIO, Plaintiff–Appellant,**

v.

**Gary RABINE, individually and d/b/a
Rabine Brothers, and G. Rabine &
Sons, Inc., Defendants–Appellees.**

No. 97–2043.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 5, 1997.

Decided Nov. 3, 1998.

**428**

Louis E. Sigman, Dale D. Pierson, Catherine Chapman (argued), Baum, Sigman, Auerbach, Pierson & Neuman, Chicago, IL, for Plaintiff–Appellant.

Christine L. Olson, D. Kendall Griffith (argued), Hinshaw & Culbertson, Chicago, IL, Louis W. Brydges, Sr., Hinshaw & Culbertson, Waukegan, IL, for Defendants–Appellees.

Before BAUER, RIPPLE, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

In 1989, Gary T. Rabine (Gary Jr.) signed a contract with Local 150 of the International Union of Operating Engineers, in which he purported to be the owner-operator of a company called Rabine Brothers. The agreement on its face bound Rabine Brothers to the collective bargaining agreement (CBA) between Local 150 and the Mid–America Regional Bargaining Association. Rabine Brothers in fact was a business solely owned by Gary Jr.; it had no employees, either then or at any time pertinent to this case. When Gary Jr. needed extra hands, he hired independent contractors. Gary Jr.'s father, Gary L. Rabine (Gary Sr.), owned a different company called G. Rabine & Sons, Inc. (Rabine & Sons), which did have a few employees. No one ever signed any agreement with Local 150 on behalf of Rabine & Sons, but the names of the companies and their lines of business were similar enough that confusion ensued, leading to this lawsuit.

Rabine Brothers was in the business of providing snowplowing services during the winter, and occasional retaining wall work during the summer. Rabine & Sons specialized in paving, with sidelines in grading, hauling, tree-trimming, and related services. In 1991, Gary Sr. incorporated Rabine & Sons and divided the shares among himself, his wife Pauline, and Gary Jr. In addition to owning his own company, Gary Jr. had been a full-time employee of Rabine & Sons since 1981. After the winter of 1991–92, Gary Jr. abandoned Rabine Brothers so that he could devote all his efforts to Rabine & Sons. Rabine & Sons picked up some of Rabine Brothers' work, but it amounted to less than 5% of the corporation's business. In June 1994, Gary Jr. became the sole shareholder, director, and officer of Rabine & Sons, when his parents decided to retire.

Meanwhile, in 1992, Local 150 became concerned that Gary Jr. was not employing union members pursuant to Article XII of the

1989 CBA. It wrote to "Rabine Brothers" (which no longer existed), claiming that it had twice violated the CBA, and "Rabine Brothers" settled the complaints in 1993. During late 1994 and early 1995, Local 150 contacted "Rabine Brothers" on three occasions, each time claiming an additional violation of the CBA. Gary Jr., however, had become less accommodating. He refused to have anything at all to do with the union, or with the grievance and arbitration processes between the union and Rabine Brothers that followed. An arbitrator then entered awards of $20,837.00, $7,675.11, and $1,952.32 against "The Employer," without specifying who that might be, and the union mailed the documentation of the arbitrator's decisions to what it designates in its briefs as "The Company" (a label apparently intended to reflect the union's position that Rabine Brothers and Rabine & Sons are interchangeable) with demands for payment.

Gary Jr. ignored the awards instead of paying them by the end of the 90–day limitations period within which parties must challenge federal labor arbitration awards. See *International Union of Operating Eng'rs, Local 150, AFL–CIO v. Centor Contractors, Inc.*, 831 F.2d 1309, 1311 (7th Cir.1987). The union finally got his attention by filing this suit under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, to enforce the arbitral awards against Gary Jr. (both individually and doing business as Rabine Brothers) and against Rabine & Sons. The defendants, to whom we refer collectively as "the Rabines" when appropriate, responded with a challenge to the subject matter jurisdiction of the district court, arguing that the CBA was invalid at the outset because Rabine Brothers did not satisfy the statutory definition of an "employer" with the capacity to enter into a CBA under § 301 of the LMRA. See *International Union of Operating Eng'rs Local 487 Health and Welfare Trust Fund and Heavy Const. Ass'n of South Florida, Inc.*, 141 L.R.R.M. 1113, 1116 (N.L.R.B.1992) (organization with no employees is not a statutory "employer"). Local 150 countered that the 90–day limitations period rendered the arbitral awards impervious to all challenges, including jurisdictional ones. Since, the union asserted, Rabine &

Sons was a successor to, alter ego of, or joint employer with Rabine Brothers, Rabine & Sons had to satisfy the awards. Ruling on cross-motions for summary judgment, the district court rejected all three of the union's arguments, and agreed with the Rabines that Rabine Brothers, the only "employer" to sign the CBA, was not empowered by the LMRA to enter such an agreement. Finding as a result no subject matter jurisdiction, the court granted the Rabines' motion for summary judgment (although if the jurisdictional theory had been correct, dismissal for lack of jurisdiction would have been the proper disposition of the case). The union appealed the court's rejection of its alter ego theory, and the court's conclusion that the 90–day limitations period did not bar the Rabines' challenge.

## I

Before addressing the merits of the appeal, we pause briefly to discuss once again the troublesome question of when it is proper to characterize something as a defect in subject matter jurisdiction, and when the problem is really a failure to state a claim. This distinction is of critical importance, because only if an issue relates to subject matter jurisdiction can it be raised at any time during litigation, regardless of normal rules governing the presentation of issues. See *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 704, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *Cook v. Winfrey*, 141 F.3d 322, 324–25 (7th Cir.1998); Fed.R.Civ.P. 12(h)(3). Here, if the question whether a federal court can entertain a § 301 case even though there was never any "employer" capable of entering into a CBA is jurisdictional, then the Rabines were entitled to raise it before the district court despite their failure to act within the 90–day limitations period. If that question relates only to the statement of a claim, then we confront a serious problem of waiver. Another way of putting the same point is to ask under what circumstances the non-waiver rule of Rule 12(h)(3) applies, short of a showing (for example) that a claim does not even "arise under" federal law for purposes of 28 U.S.C. § 1331, or that the

parties are not of diverse citizenship for purposes of 28 U.S.C. § 1332.

The federal courts are courts of limited jurisdiction. We have no authority to adjudicate cases outside our purview, but "[j]urisdiction is a many-hued term," and its use does not always mark a case as beyond our reach. See *United States v. Wey*, 895 F.2d 429, 431 (7th Cir.1990). In *Steel Co. v. Citizens for a Better Env't*, —— U.S. ——, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), the Supreme Court at least partially specified the circumstances in which "jurisdiction" is the proper lens through which to view issues that come before us. As a result, although this court and others have in the past occasionally treated the need for a valid agreement between an employer and a labor organization as a "jurisdictional" prerequisite for actions to enforce arbitral awards under the LMRA, see, *e.g.*, *Sheet Metal Workers Local Union No. 20 v. Baylor Heating and Air Conditioning, Inc.*, 877 F.2d 547, 556 (7th Cir.1989); *Sheet Metal Workers Int'l Ass'n, Local Union No. 150 v. Air Systems Eng'g, Inc.*, 948 F.2d 1089, 1091–92 (9th Cir.1990); see also *Domino Group, Inc. v. Charlie Parker Mem'l Found.*, 985 F.2d 417, 420 n. 1 (8th Cir.1993), and we have done the same in the analogous area of benefit plans governed by the Employee Retirement Income Security Act (better known as ERISA), see, *e.g.*, *Cvelbar v. CBI Illinois Inc.*, 106 F.3d 1368, 1373 (7th Cir.1997), today we follow the guidance of *Steel Co.* and hold that the absence of a statutory "employer" does not deprive this court of jurisdiction to hear a claim to enforce an arbitral award. Rather, a complaint which fails to allege the presence of such an employer fails to state a claim, and a plaintiff who fails to prove the presence of such an employer loses on the merits. See *Sharpe v. Jefferson Distrib. Co.*, 148 F.3d 676, 677 (7th Cir.1998) (Title VII; citing *Steel Co.*); *Strasburger v. Board of Educ., Hardin County Community Unit Sch. Dist. No. 1*, 143 F.3d 351, 359–60 (7th Cir.1998) (LMRA). See also *United States v. Martin*, 147 F.3d 529, 531–33 (7th Cir.1998).

In *Steel Co.*, the Supreme Court began with the basics:

It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional power to adjudicate the case.... Rather, the District Court has jurisdiction if "the right of petitioners to recover under the complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another."

—— U.S. at ——, 118 S.Ct. at 1010 (quoting *Bell v. Hood*, 327 U.S. 678, 685, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). See also *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). In the case before this court, Local 150 alleged that Rabine Brothers was a statutory employer. See First Amended Complaint ¶ 3. As it turns out, the union was wrong, or at least it failed to bring forward sufficient evidence to create a genuine issue of material fact on the question. The fact that the union was wrong does not mean that the district court had no jurisdiction to hear its complaint. As the Supreme Court worried in *Steel Co.*, to approach this otherwise "would turn every statutory question ... into a question of jurisdiction," and lead to the untenable result that every merits question "would have to be considered by this Court even though not raised earlier in the litigation—indeed, this Court would have to raise them *sua sponte*." —— U.S. at ——, 118 S.Ct. at 1011. See also *Sharpe*, 148 F.3d at 677–80.

Recently, the Supreme Court approved application of this principle to invalidity defenses in § 301 suits. In *Textron Lycoming Reciprocating Engine Div., AVCO Corp. v. UAW*, —— U.S. ——, 118 S.Ct. 1626, 140 L.Ed.2d 863 (1998), the Court decided that § 301 of the LMRA does not provide a federal court with subject matter jurisdiction over a suit to declare a CBA voidable, in the absence of any alleged violation of the agreement. —— U.S. at —— n. 1, ——, ——, 118 S.Ct. at 1628 n. 1, 1629, 1631. The Court went on, however, to emphasize that

[t]his does not mean that a federal court can never adjudicate the validity of a con-

tract under § 301(a). That provision simply erects a gateway [*i.e.*, an arguable claim of breach] through which parties may pass into federal court; once they have entered, it does not restrict the legal landscape they may traverse. Thus if, in the course of deciding whether a plaintiff is entitled to relief for the defendant's alleged violation of a contract, the defendant interposes the affirmative defense that the contract was invalid, the court may, consistent with § 301(a), adjudicate that defense. *Id.* at ——, 118 S.Ct. at 1629. Likewise, in this case, the defendants' invalidity defense to the Union's enforcement action was properly before the district court and is properly before this court. The success or failure of the defense does not affect either court's jurisdiction to consider it. See *Sharpe*, 148 F.3d at 677. See also *LaSalle Nat'l Trust v. ECM Motor Co.*, 76 F.3d 140, 143–44 (7th Cir.1996).

■ The prospect of adjudicating disputes that fall outside the reach of such statutes as the LMRA and ERISA may seem distressing in light of the fundamental question of the court's power to act if the prerequisites Congress has specified do not exist. There is, after all, no general federal power over the law of contract—a proposition that has been clear at least since the Supreme Court decided *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). But this does not mean the federal courts are incapable of adjudicating where the statutory boundaries fall. Thus, the power of a federal court to act with respect to a CBA, or an ERISA benefits plan, depends critically upon the question whether that agreement or plan has been brought within the federal regulatory structure or not. If not, then a federal court, as one institution of the federal government, has no power to resolve a dispute regarding that agreement or plan. But if a party makes an arguable, but ultimately unsuccessful claim for coverage, a federal court does have the power to make the coverage determination, although the result may simply be a decision to dismiss for failure to state a claim. See *Textron*, —— U.S. at ——, 118 S.Ct. at 1629. Respect on the one hand for the line between the federal domain and that of the states, and recognition on the

other hand of the federal courts' responsibility to hear those cases which do fall within their jurisdiction, leads to the conclusion that a challenge of the type made by the Rabines here should be treated not as a claim relating to subject matter jurisdiction (which can never be waived and which the federal court has an independent duty to monitor) but rather as a challenge to the merits of the opposing party's complaint. Despite the language in *Baylor Heating* and *Cvelbar* to the contrary, after *Steel Co.* and *Textron*, there can be no doubt that the district court had jurisdiction to hear Local 150's complaint.

## II

■ Having concluded that the presence of a statutory employer is not a jurisdictional fact, we must address the waiver question, which in this case is inseparable from the question whether the 90–day limitations period applicable to challenges to arbitral awards issued under § 301 bars the Rabines' argument. If the limitations period applies to the Rabines, then they have waived the invalidity defense and we must reverse the district court. If the limitations period does not apply, then the Rabines were within their rights to raise invalidity for the first time in the district court, and we must review the merits of that court's decision to grant their motion for summary judgment.

The Rabines have, in effect, already conceded this point, having correctly cited *Sullivan v. Gilchrist*, 87 F.3d 867 (7th Cir.1996), for the rule that challenges to an arbitrator's jurisdiction are waived if not brought within the 90–day limitations period. Like the defendant in *Sullivan*, the Rabines (having lost on the issue of the district court's subject matter jurisdiction) can only hope we will conclude that the absence of a valid CBA destroyed the arbitrator's jurisdiction over the union's complaints. In *Sullivan*, we refused to consider just such a defense, made outside the 90–day window, by an employer who argued that he was not bound by an arbitral award imposed pursuant to a CBA he had not signed, but had inherited along with all the other trappings of a business he had acquired. *Sullivan*, 87 F.3d at 871. An

**432**

argument might be made that our refusal to hear him out was *dicta*, see *id.* (relying on the defendant-employer's filing of more than 70 contribution reports with the plaintiff-union over a five-year period and a successor liability provision in the CBA, as well as the lapsed statute of limitations), but we see no reason to change our tune. As the Second Circuit recently explained, the purpose of this statute of limitations is to ensure speedy resolution of labor disputes, and when a defendant "fails to articulate a reason why it needed more than the ninety days," and relies instead on a newly alleged and collaterally raised failure of arbitral jurisdiction, a federal court will ignore the defense and enforce the judgment of the arbitrator. *Local 802, Associated Musicians of Greater New York v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir.1998).

Undoubtedly, there may be situations in which the important national labor policies that militate in favor of speedy and certain enforcement of labor arbitrations, see *Teamsters Local No. 579 v. B & M Transit, Inc.*, 882 F.2d 274, 276 (7th Cir.1989), would run up against the more fundamental underlying policy that parties, including unions and employers, should be held to their contractual commitments to arbitrate, but not forced to submit to contracts to which they are not parties or to terms they did not accept, see *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). In this case, however, there is no such conflict. As the district court pointed out, the NLRB has held that an entity cannot be an employer unless it employs someone. See *International Union of Operating Eng'rs Local 487 Health and Welfare Trust Fund*, 141 L.R.R.M. at 1116. This reading of the statute is consistent with the immunity from suit under § 301 enjoyed by individual workers, see *United Food and Commercial Workers Local 951, AFL–CIO and CLC v. Mulder*, 31 F.3d 365, 370 (6th Cir.1994) (citing *Complete Auto Transit, Inc. v. Reis*, 451 U.S. 401, 101 S.Ct. 1836, 68 L.Ed.2d 248 (1981)), with the established definition of an "independent contractor" under the LMRA, see *C.C. Eastern, Inc. v. NLRB*, 60 F.3d 855, 858 (D.C.Cir. 1995), and with the definitions under ERISA

of "employee" and "employer." See *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323–24, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992); see also *Matinchek v. John Alden Life Ins. Co.*, 93 F.3d 96, 100–01 (3rd Cir. 1996) ("jurisdictional" dismissal for this reason); *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 741 n. 14 (7th Cir.1986). Rabine Brothers, as even Local 150 concedes, was not an employing entity. It was never anything more than Gary Jr. himself, acting through his sole proprietorship. As a result, it is difficult to see how an arbitrator could have concluded that the contract between Rabine Brothers and Local 150 was a valid CBA under the LMRA. But whether Rabine Brothers was an LMRA-covered employer or not, its sole proprietor, Gary Jr., did sign a contract with Local 150 that included an arbitration clause. The contract may have been invalid, or the clause inapplicable to the dispute, but when Gary Jr. and his companies made the decision to sit on their collective hands, they waived the right to challenge the outcome later. See *Centor Contractors*, 831 F.2d at 1311; see also *International Union of Operating Eng'rs, Local No. 841 v. Murphy Co.*, 82 F.3d 185, 188 (7th Cir.1996).

### III

Reaching out to all prospective parties who might be in a position to pay the damages awarded by the arbitrator, Local 150 included Rabine & Sons in its complaint, arguing that the corporation should be held to account for the obligations of Rabine Brothers because the two were joint employers, and because Rabine & Sons was a successor employer to Rabine Brothers. On appeal, it has abandoned both arguments, although at oral argument it spent some time discussing the latter—a futile exercise, since arguments not raised in a brief are waived. See, e.g., *Ricci v. Arlington Heights, Ill.*, 116 F.3d 288, 292 (7th Cir.1997).

Last, the union argued in the district court and to us that Rabine & Sons is "the thinly-disguised continuation of Rabine Brothers with a new name and *no* union contract," Appellant's Brief at 16 (emphasis

in original), and thus that the contract Gary Jr. signed on behalf of Rabine Brothers necessarily bound Rabine & Sons as well. This alter ego theory may come closest to describing what actually happened, but it does not improve the union's position vis-à-vis Rabine & Sons. The union may have thought that by signing up Rabine Brothers it had also signed up Rabine & Sons, but that doesn't make it so. The CBA clearly identifies Rabine Brothers as the signing employer, and we need not endorse the district court's approach—that a transfer of employees is a prerequisite to application of the alter ego doctrine to LMRA disputes—to agree that no genuine issue of material fact existed as to the alter ego status of Rabine & Sons. Of the seven factors that the NLRB has said are relevant to an alter ego claim—substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership, see *Crawford Door Sales Co.*, 94 L.R.R.M. 1393, 1393–94 (1976)—few provide even a hint of a connection between Rabine Brothers and Rabine & Sons. At most, the management and ownership of the two companies had a good deal in common, but that alone is insufficient to establish alter ego status. See *Amalgamated Meat Cutters & Butcher Workmen of N.A., AFL–CIO, Local 576 v. NLRB*, 663 F.2d 223, 227 (D.C.Cir. 1980). The district court's emphasis on the absence of any employee transfers translates easily into the impossibility of substantially identical supervision: There were no employees to supervise at Rabine Brothers, so any supervision at Rabine & Sons (of which there appears to be plenty) would be substantially different from conditions at Rabine Brothers. The two companies also had very limited overlap in customers, equipment, business purpose, and operations. Whatever else Rabine & Sons became after Gary Jr. closed up shop at Rabine Brothers to devote himself to his father's business full-time, it was not "merely a disguised continuance of the old employer," involving "a mere technical change in the structure or identity of the employing entity." *Howard Johnson Co. v. Detroit Local Joint Executive Bd., Hotel and Restaurant Employees and Bartenders Int'l Union, AFL–CIO*, 417 U.S. 249, 259 n. 5, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974).

In the end, it appears that the union may just have been careless in its assumptions about the party with which it was dealing (which is a lesson it might have learned from earlier mistakes, see, *e.g., International Union of Operating Eng'rs, Local 150, AFL–CIO v. Sinnett Excavating, Inc.*, 1995 WL 23040 (N.D.Ill. Jan.19, 1995)). At this juncture, however, we are left with an entity (Rabine & Sons) that was not before the arbitrator (recall that the union's grievances were all directed to Rabine Brothers) and not a party to the CBA in any sense of the word. Local 150 fails to identify a single connection between Rabine & Sons and the grievance and arbitration proceedings (its unexplained and obfuscatory references to "The Company" provide no insight on this question), and absent some relevant link between Rabine & Sons and the penalties imposed on Rabine Brothers, we will not enforce them against Rabine & Sons. See *NCR Corp. v. Sac–Co., Inc.*, 43 F.3d 1076, 1080 (6th Cir.1995); *Tanoma Mining Co. v. Local Union No. 1269, UMWA*, 896 F.2d 745, 750 & n. 6 (3rd Cir. 1990); *cf. Transportation Cybernetics, Inc. v. Forest Transit Comm'n*, 950 F.2d 350, 352–54 (7th Cir.1991).

In this case, both parties gambled. The union could have filed suit to force the Rabines to appear before the arbitrator. See *AT & T Technologies*, 475 U.S. at 649, 106 S.Ct. 1415; *International Union of Operating Eng'rs, Local Union 103 v. Indiana Constr. Corp.*, 13 F.3d 253, 255 (7th Cir. 1994). It would have lost, but it also would have saved itself considerable time and expense. The Rabines could have appeared before the arbitrator to defend themselves, while preserving their jurisdictional argument, see *International Ass'n of Machinists and Aerospace Workers, Lodge No. 1777 v. Fansteel, Inc.*, 900 F.2d 1005, 1008–09 (7th Cir.1990); see also *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 946, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), or at least taken action to vacate the arbitrator's judgment within 90 days of learning about it. For the Rabines in particular this was a high-stakes gamble, and it is not one that this court commends to future defendants in arbitration disputes, since if there is an ex-

434

ception to the 90–day limitations period we have not encountered it in the past and we do not create one today. The rule is a simple one: If you receive notice of an adverse decision in a federal labor arbitration, challenge it within 90 days or expect to pay up. Just as there is a difference between a jurisdictional prerequisite and a merits prerequisite, there is a difference between a timely valid defense and an untimely one.

We therefore AFFIRM the judgment of the district court with respect to Rabine & Sons, REVERSE the judgment with respect to Gary Jr. and Rabine Brothers, and REMAND for proceedings consistent with this decision. Each party shall bear its own costs.