**Donald PORTER, as Treasurer of The United Union of Roofers, Waterproofers, and Allied Workers, Local Union No. 74, Petitioner,**

v.

**THOMPSON ROOFING AND SHEET METAL CO., INC., Respondent.**

No. 98–CV–0508C(Sc).

United States District Court, W.D. New York.

Jan. 25, 2000.

As Amended April 18, 2000.

Morris, Cantor, Barnes, Goodman & Furlong (Michael E. Reilly, of counsel), Cheektowaga, NY, for petitioner.

Jaeckle, Fleischmann & Mugel, LLP (Sean P. Beiter, of counsel), Buffalo, NY, for respondent.

DECISION and ORDER

CURTIN, District Judge.

### INTRODUCTION

Presently before this court is petitioner's motion for summary judgment. Item 10. Respondent opposes petitioner's motion and has filed its own motion for summary judgment. Item 13. For the reasons set forth below, petitioner's motion is granted and respondent's motion is denied.

### BACKGROUND

Petitioner United Union of Roofers, Waterproofers and Allied Workers, Local Union No. 74 ("Union"), is a labor organization as defined by the National Labor Relations Act ("NLRA"). Donald Porter ("Porter") is the Union's Treasurer and Business Agent. Respondent Thompson Roofing and Sheet Metal Company, Inc. ("Thompson Roofing") is a roofing business owned and operated by Danny Thompson. Mr. Thompson also owns Danny Thompson, Inc. ("DTI"), a separate and distinct company which performs a variety of building and construction services.

On May 9, 1994, Thompson Roofing and Roofers Local 74 entered into a Collective Bargaining Agreement ("CBA"). The

CBA had been negotiated between the Union and Greater Buffalo Roofing and Sheet Metal Contractors Association, Inc. ("Employer's Association"). Neither Thompson Roofing nor DTI belong to the Employer's Association. Item 1, Exh. A.

On June 2, 1995, the Union notified Thompson Roofing that the company was in violation of Article III of the CBA, which requires employees of Thompson Roofing to be active members of the Union. Item 10; Exh. E; Letter from Porter to Thompson of 6/2/95. Pursuant to Section 1 of Article III, the Union ordered Thompson Roofing to terminate all employees who did not join the Union by June 9, 1995. *See* Item 1; Exh. A. If Thompson Roofing failed to do so, the Union threatened to file a grievance. Item 10; Exh. E.

On November 27, 1995, the Union acted on its threat of June 2, 1995, and filed a grievance against Thompson Roofing alleging that from May 1994 through December 1994, Thompson Roofing employed non-union workers to perform work negotiated under the CBA. *See* Item 1; Exh. D. On May 2, 1996, the National Labor Relations Board ("NLRB") issued an Unfair Labor Practice ("ULP") complaint against Thompson Roofing. This charge was resolved on September 9, 1996, when the parties entered into a settlement agreement. Item 1; Exh. K; Settlement Agreement of 9/9/96.

According to that agreement, the Union withdrew its ULP charge and Thompson Roofing waived its objections to the arbitration of the November 27, 1995 grievance. *Id.* Also part of that agreement, Thompson Roofing stipulated to provide the Union with specific details about the work the company performed from May 1994 to the present. In particular, Thompson Roofing agreed to release to the Union the names of its customers during that time period, the names of employees who performed work for those customers, and the wages paid to those employees. Item 1; Exh. K.

On August 1, 1997, the Union served DTI with a subpoena duces tecum. Item 1; Exh. E. The subpoena required the "Business Records Custodian" of DTI to appear ready to give evidence at an "Arbitrator Joint Adjustment Board" meeting on August 4, 1997, with documents pertaining to DTI's employees and the jobs those employees worked on from "May 1994 to present." *Id.*

When DTI failed to appear on August 4, 1997, the Union's attorney wrote DTI a letter dated August 6, 1997. Item 1; Exh. F; Letter from Furlong to Thompson of 8/6/97. The letter notified the company that due to its absence, the August 4, 1997 arbitration was adjourned until August 18, 1997. *Id.* On August 8, 1997, Thompson Roofing received written notice that a "Joint Adjustment Board Arbitration Hearing" was scheduled for August 18, 1997. Item 1; Exh. B.

On August 14, 1997, Sean Beiter, Thompson Roofing's attorney wrote to the Richard Fulrong, the Union's attorney. Item 1, Exh. G; Letter from Beiter to Furlong of 8/14/97. In the letter Thompson Roofing acknowledged that the meeting scheduled for August 4, 1997, was rescheduled to August 18, 1997, but disputed that the meeting was an arbitration.[1] *Id.*

---

1. In this letter Thompson Roofing also raised the issue of whether it received proper written notice of the August 4, 1997 meeting before the "Arbitrator Joint Adjustment Board." *See* Item 1; Exh. G. Thompson Roofing argued that proper notice for that alleged arbitration had not been given because DTI, not Thompson Roofing, was served with a subpoena relating to the alleged Arbitration. *Id.* There is nothing in the record which indicates that Thompson Roofing was in fact given actual written notice of the arbitration originally scheduled for August 4, 1997. However, based on the statements made in the company's August 14, 1997 letter to the Union, it is clear that the company had constructive notice of that meeting. Moreover, whether Thompson Roofing was given proper notice of the August 4, 1997 meeting is entirely irrelevant to the present action, which is limited to the legality of the award rendered after the August 18, 1997 arbitra-

Referencing Article XXIII of the CBA, Thompson Roofing argued that the Joint Adjustment Board meeting could not be called an arbitration because Article XXIII requires an arbitration to be preceded by a "compromise meeting" with the Joint Adjustment Board ("JAB"). *Id.* As such, Thompson Roofing sought confirmation from the Union whether it considered the August 18, 1997 meeting of the JAB an arbitration, and the provision within the CBA which provided that such an arbitration could be conducted. Thompson Roofing also made it a point to remind the Union of its right to be present at JAB meetings and subsequent deliberations. *See id.*

As to the subpoena duces tecum served on Thompson Roofing, the company objected to the Union's request for information about work it had performed between May 1994 and the present. Item 1, Exh. G; Letter from Beiter to Furlong of 8/14/97. Thompson Roofing stated that such information was irrelevant because the grievance that the Union filed was limited to work that Thompson Roofing performed between May 1994 and December 1994. *Id.*

The Union's attorney responded to Thompson Roofing's objections in a letter dated August 15, 1997. Item 1; Exh. H; Letter from Furlong to Beiter of 8/15/97. In the letter the Union clarified that the arbitration scheduled for August 18, 1997 was an attempt to resolve the grievances filed on June 2, 1995, and November 27, 1995. *Id.* The Union also admitted that Thompson Roofing may not have been served with a subpoena for the August 4, 1997 meeting, and that the subpoena sent to DTI could only cover records from May 1994 to December 1994. However, the Union opposed Thompson Roofing's objections to the alleged arbitration, arguing that Thompson Roofing waived its ability to raise such objections in the September 9, 1996 Settlement Agreement. *See* Item 1; Exh. K, ¶ 5. As a final point, the Union

tion, of which Thompson Roofing was given

confirmed that "the [JAB's] award will be deemed the functional equivalent of an arbitration award," and as such, the decision of the JAB would be final, binding, and enforceable. Item 1; Exh. H.

On the day that the alleged arbitration was scheduled to take place, Thompson Roofing faxed a letter to the Union's attorney, responding to the Union's August 15, 1997 correspondence. Item 1, Exh. I Letter from Beiter to Furlong 8/18/97. The letter stated that the CBA required a compromise meeting to be held prior to an arbitration; and as such, Thompson Roofing would not be participating in that evening's alleged arbitration. *Id.* The company further warned the Union that it objected to the Employer's Association negotiating on its behalf as Thompson Roofing was not a member of that organization. *Id.* Furthermore, Thompson Roofing confirmed that it would not recognize any decision resulting from the alleged arbitration because according to the CBA, the JAB did not have the authority to issue an arbitration award.

A few hours later, the Union's attorney faxed a letter back to Thompson Roofing's attorney, in which the Union indicated that it found Thompson Roofing's "eleventh hour" tactics to be inappropriate, and that the proper course of action for the company to take was to seek a stay of the arbitration. Item 1; Exh. J; Letter from Furlong to Beiter of 8/18/97. Because Thompson Roofing failed to take such action, the Union believed it had every right to proceed with that evening's arbitration hearing regardless of Thompson Roofing's participation.

The hearing was held as scheduled on August 18, 1997. Approximately one month later, on September 13, 1997, the JAB issued its decision ordering Thompson Roofing to tender: (1) $118,208 to the Union for wage delinquencies; (2) $91,-486.61 to the Union's Health and Welfare

proper written notice.

Fund; (3) $80,813.11 to the Union's Pension Fund; (4) $3,049.29 to the Roofers Local 74 Joint Apprentice/Educational Fund; (5) $1,189.42 to the Roofing Industry Promotional Fund of Western New York; and (6) $5,700 and $10,538.46 to the Roofers Local 74 General Fund for Union dues, initiation fees and attorney's fees. The JAB further ordered defendant to provide Steven Schmitz, C.P.A. complete and immediate access to the financial records needed to perform a thorough audit for the period of May 1994 to September 1997. *See* Item 15.

Thompson Roofing refused to comply with the award, but did not move to have the award vacated. As a result, the Union and Porter filed the present action seeking to confirm the arbitration award under Section 301 of the Labor Management Relations Act ("LMRA").

## DISCUSSION

The Union claims that it is entitled to summary judgment as a matter of law because the affirmative defenses Thompson Roofing raises in its answer are time-barred. In response, Thompson Roofing contends that the Union's motion should be denied and the petition to confirm dismissed because the arbitration process staged by the Union was fatally flawed; and as such, jurisdiction to confirm the award is lacking. More specifically, Thompson Roofing argues that there was no agreement to arbitrate the dispute which underlies this present action, or, in the alternative, that the Union's demand to arbitrate was defective.

The court need not consider the merit of Thompson Roofing's numerous affirmative defenses, because regardless of their validity the company waited too long to bring the various objections before a court. In *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien*, 145 F.3d 85, 89 (2d Cir.1998), the Court of Appeals held that the statute of limitations for actions filed under section 301 of the LMRA is the same time limit imposed on actions brought under N.Y.C.P.L.R. § 7511(a). Pursuant to Section 7511(a) of the New York Civil Practice and Law Rules, "[a]n application to vacate or modify an award may be made by a party within ninety days" of delivery of the award.

Although federal courts borrow this statute of limitations from state law, in *Local 802*, the Second Circuit specifically rejected the broad interpretation state courts have given Section 7511(a) by allowing defendants, in arbitration award confirmation actions, "to raise affirmative defenses after the ninety-day statute of limitations has expired." *Bevona v. EBM Development Co., Ltd.*, No. 98–6207, 1999 WL 494116 at *2, (S.D.N.Y. July 13, 1999). According to the Second Circuit, "[t]he New York Courts have placed a gloss on the limitations statute that is inimical to the important federal interests of promoting resolution of labor conflicts quickly and effectively through arbitration." *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien*, 145 F.3d 85, 89 (2d Cir.1998).

The facts of *Local 802* are closely analogous to the facts behind the present action. *Local 802*, involved a dispute between a local musicians' union and New York City's Parker Meridien Hotel. The musicians' union demanded that the Parker Meridien pay its members in accordance with the collective bargaining agreement. When it refused, the musicians' union filed a demand for arbitration against Parker Meridien. Similar to the reaction of Thompson Roofing in our present case, Parker Meridien did not appear at the arbitration hearing, but advised the arbitrator in writing that it objected to the arbitrator's jurisdiction. The arbitrator ultimately issued an award in the musicians' favor. "Parker Meridien refused to abide by the award, but did not seek to vacate it." *Local 802*, 145 F.3d at 87.

Eventually, the musicians' union filed a petition to confirm the award. Parker Meridien pleaded, as an affirmative defense, that the arbitrator lacked jurisdiction. In reviewing the district court's decision to grant the petition, the Second Circuit found Parker Meridien's affirmative defenses untimely because the hotel had failed to file a motion to vacate the award within the ninety-day limit. The court held:

"a defendant's failure to vacate [an] arbitration award within the prescribed time period for such a motion precludes it from seeking affirmative relief in a subsequent action to enforce the award." This holding is intended to enhance the speed and effectiveness of arbitration, to provide fair review of the arbitrator's decision, and to preclude the losing party from dragging out proceedings in order to dilute the integrity of the arbitration award.

*Local 802,* 145 F.3d at 89 (quoting, *Teamsters Local No. 579 v. B & M Transit, Inc.,* 882 F.2d 274, 276–278 (7th Cir.1989)) (citations omitted).

A few years later, the Seventh Circuit spoke again on this problem. In *International Union of Operating Engineers v. Rabine,* 161 F.3d 427, 433–34 (7th Cir. 1998) at its conclusion the court stated:

> For the [defendant company] in particular this was a high-stakes gamble, and it is not one that this court commends to future defendants in arbitration disputes, since if there is any exception to the 90–day limitations period we have not encountered it in the past and we do not create one today. The rule is a simple one: If you receive notice of an adverse decision in a federal labor arbitration, challenge it within 90 days or expect to pay up.

Here, Thompson Roofing did not file a motion stay the arbitration, nor did it file a motion to vacate the award within the ninety-day time limit provided in section 7511(a) of the N.Y.C.P.L.R. Instead, Thompson Roofing remained idle as the Union took action to resolve the dispute. While such inaction may not be detrimental in state court, it is fatal to cases brought to federal court under the LMRA.

Accordingly, Thompson Roofing is barred from raising its affirmative defenses in opposition to the Union's petition to confirm. As such, there are no issues of fact to decide at trial; and thus, the Union is entitled to summary judgment as a matter of law.

## CONCLUSION

For the reasons set forth above, the Union's motion for summary judgment is granted and Thompson Roofing's motion is denied. The Clerk of the Court is directed to enter judgment granting the petition to confirm the arbitration award dated September 18, 1997.

So ordered.