561 F.2d 1264
 96 L.R.R.M. (BNA) 2437, 82 Lab.Cas. P 10,149
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
The BELL COMPANY, INC., and its agent, Richard Balestrieri,
Paul Moskowitz, as receiver for The Bell Company,
Inc., and Richard Balestrieri, d/b/a
Endurall Products, Respondents.
 No. 76-1871.
 United States Court of Appeals, Seventh Circuit.
 Argued April 15, 1977.
Decided Sept. 26, 1977.
 
 Elliott Moore, Deputy Assoc. Gen. Counsel, David A. Fleischer and John D. Burgoyne, Attys., N. L. R. B., Washington, D.C., for petitioner.
 Stanley S. Jaspan, Milwaukee, Wis., for respondents.
 Before FAIRCHILD, Chief Judge, and TONE and WOOD, Circuit Judges.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 This case is before the court on an application by petitioner, National Labor Relations Board, pursuant to § 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e), for enforcement of its order of June 30, 1976,[1] against the Bell Company (hereinafter referred to as Bell), Richard Balestrieri as agent for Bell, Paul Moskowitz as receiver for Bell, and Richard Balestrieri, doing business as Endurall Products (hereinafter referred to as Endurall).
 
 
 2
 Enforcement of the NLRB's order against Richard Balestrieri, doing business as Endurall Products, depends upon whether Endurall is the alter ego of Bell. If so, Endurall is accountable for Bell's violations of the National Labor Relations Act and is subject to the terms of the contract between Bell and the union representing Bell's employees. For the following reasons, we find that Endurall was not the alter ego of Bell and that enforcement of the NLRB's order must be denied.[2]
 
 
 3
 Because of our decision, we need not summarize facts relating to the underlying dispute between Bell and the United Brotherhood of Carpenters Council of Milwaukee County and Vicinity, United Brotherhood of Carpenters and Joiners of America, AFL CIO (hereinafter referred to as the union). A brief summary of the relevant facts follows.
 
 
 4
 Bell manufactured and installed formica and laminated plastic countertops and cabinets. Bell employed nine employees and operated subject to an area wide collective bargaining contract since 1956.
 
 
 5
 Bell was owned by four brothers: James, Giuseppi, Dominic and Anthony Balestrieri. The four brothers comprised the Board of Directors for the company. A fifth brother, John, was not an owner of Bell but acted as general manager for Bell until two years prior to the termination of Bell's operations.
 
 
 6
 In 1973, John Balestrieri's son, Richard, was elected president of Bell. As time went on, Richard Balestrieri assumed greater control of Bell's operation. At the same time, supervision by John and Anthony Balestrieri decreased.
 
 
 7
 Richard Balestrieri's authority to run the company was in some respects limited. Richard had authority to hire employees but did not possess absolute authority to fire employees. Although he was authorized to bid on jobs, he was required to seek approval from the owners of Bell for large jobs. Similarly, approval for large capital expenditures was also required. In addition, major labor grievances were required to be submitted to the Board of Directors. Finally, the terms of Richard's employment were set by the owners of the company.
 
 
 8
 On June 16, 1975, the Board of Directors sent Richard Balestrieri a letter requesting his resignation as president of Bell because the company had been losing money. Richard Balestrieri submitted his letter of resignation on June 23, 1975. On June 19, 1975, James Balestrieri announced that Bell was ceasing operations because of financial losses. Bell's operations terminated on June 27, 1975, and all employees were discharged.
 
 
 9
 Thereafter, Richard Balestrieri proceeded to set up Endurall Products. Bonny Austin, who was Richard Balestrieri's secretary at Bell and who now works for Endurall, invested $5,000 in the new company. In addition, Richard's father, John Balestrieri, permitted his life insurance policy to be used as collateral for a $15,000 loan advanced to Endurall by the M & I West Suburban Bank. Endurall also purchased two pieces of equipment from Bell by assuming the remaining payments in the amount of $6,000 owed by Bell on a chattel mortgage held by the bank. In addition, Endurall purchased Bell's old equipment, inventory and supplies for an amount greatly discounted from the original purchase price. There was, however, no clear evidence as to present fair market value of this equipment. Endurall for less than one month initially operated out of Bell's old premises. This property was owned by BelCor, a real estate holding company controlled by Anthony and John Balestrieri. Anthony and John Balestrieri through Bel-Cor allowed Endurall to use this property rent free for this period of time. By the end of the month, Endurall moved to new premises.
 
 
 10
 Endurall began operation on July 7, 1975. With some variation, the products manufactured by Endurall were similar to the products which Bell made. In addition, many of the customers served by Endurall had been customers of Bell. Richard Balestrieri circulated a letter to Bell's customers informing them of Bell's closing and requesting that they look to Endurall for their formica needs. Similarly, most of Endurall's suppliers had been suppliers of Bell. Endurall completed work on several projects initially begun by Bell. A minority of Endurall's employees are ex-Bell employees.
 
 
 11
 Endurall refused to honor the collective bargaining agreement entered into by Bell and the union. Richard Balestrieri's offer to negotiate a new contract was also rejected by the union.
 
 
 12
 Briefly summarized, the Board found that Endurall had violated Section 8(a)(5) and (1) of the National Labor Relations Act by refusing to honor Bell's contract with the union. In addition, the Board ruled that Endurall as alter ego of Bell is obligated to remedy Bell's prior unfair employment practices.[3]
 
 
 13
 When a company commits unfair labor practices, terminates operations, and a new company is subsequently created, the question becomes whether there has been a "bona fide discontinuance and a true change of ownership . . . or merely a disguised continuance of the old employer. . . . " Southport Petroleum Co. v. NLRB, 315 U.S. 100, 106, 62 S.Ct. 452, 456, 86 L.Ed. 718 (1942). If there is a bona fide discontinuance and true change in ownership, the new company is under neither a remedial obligation by virtue of a NLRB order directed at its predecessor nor is the new company subject to the old collective bargaining contract. Southport Co., supra ; NLRB v. Burns Security Services, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972); Howard Johnson Co. v. Hotel Employees, 417 U.S. 249, 259 n. 5, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974); NLRB v. Herman Brothers Pet Supply, Inc., 325 F.2d 68 (6th Cir. 1968); NLRB v. Ozark Hardwood Company, 282 F.2d 1 (8th Cir. 1960).
 
 
 14
 The Board argues that Endurall is the alter ego of Bell because of the following factors: Richard Balestrieri was in control of the operations of both Bell and Endurall; John Balestrieri allowed his insurance policy to be used as collateral for a bank loan to Endurall; Endurall was permitted to use the old premises of Bell for approximately one month without paying rent; Endurall purchased equipment from Bell at substantial savings; Endurall engaged in the same business as Bell and deals with the same suppliers and customers as dealt with Bell; a minority of Endurall's employees were also employees at Bell; Bell paid health insurance premiums for Richard Balestrieri and his secretary for the month following the alleged termination of Bell's operations; and Bell ceased operations because of antiunion animus.
 
 
 15
 The cases relied upon by the NLRB have as a common element the continued control or ownership of the new business by the owners of the old company. See NLRB v. Lewis, 246 F.2d 886, 887 (9th Cir. 1957); NLRB v. United States Air Conditioning Corp., 302 F.2d 280, 282-83 (1st Cir. 1962); Local 57, International Ladies' Garment Workers Union v. NLRB, 126 U.S.App.D.C. 81, 374 F.2d 295 (D.C.Cir. 1967), cert. denied, 387 U.S. 942, 87 S.Ct. 2074, 18 L.Ed.2d 1328; Reynolds Pallet & Box Co. v. NLRB, 324 F.2d 833 (6th Cir. 1963); NLRB v. Herman Brothers Pet Supply, Inc., 325 F.2d 68 (6th Cir. 1963).[4] In the present case, on the other hand, Richard Balestrieri was not an owner of Bell. In addition, we cannot say that he was in control of Bell. On the contrary, he worked at the pleasure of the owners of Bell and his authority was subject to restrictions imposed by them. In addition, there was no evidence that any of the prior owners of Bell owned, controlled or benefited from the operation of Endurall. Thus, the discontinuance of Bell and the subsequent creation of Endurall resulted in "meaningful impact on ownership and operation." Howard Johnson Co., 417 U.S. at 259 n. 5, 94 S.Ct. at 2242. We have found no authority to support finding Endurall an alter ego of Bell under these circumstances.
 
 
 16
 In addition, Endurall cannot be held subject to the obligations of the prior collective bargaining agreement between the union and Bell because its business was similar to Bell's. "Such a duty does not . . . ensue as a matter of law from the mere fact that an employer is doing the same work in the same place with the same employees as his predecessor . . . ." Burns Security Services, 406 U.S. at 291, 92 S.Ct. at 1384. We also cannot agree with the NLRB that the role of the owners of Bell and John Balestrieri in setting up Endurall under the circumstances in this case demonstrates that Endurall is the alter ego of Bell. Nor can we say that Bell's operations were not in fact discontinued and that ownership was not actually transferred because of alleged anti-union feelings underlying the decision to cease Bell's operations. An employer may choose to close his entire business even if the liquidation is motivated by vindictiveness towards the union. Textile Workers v. Darlington Co., 380 U.S. 263, 273-4, 85 S.Ct. 994, 13 L.Ed.2d 827 (1965).
 
 
 17
 For the foregoing reasons, we find that there is not substantial evidence in the record to support the Board's finding that Endurall was the alter ego of Bell. Accordingly, enforcement of the Board's order of June 30, 1976, against Richard Balestrieri, doing business as Endurall Products, is hereby denied. Enforcement of the Board's order against Bell, Richard Balestrieri as agent for Bell, and Paul Moskowitz as receiver for Bell is hereby granted.
 
 
 18
 Enforcement granted in part and denied in part.
 
 
 
 [1]
 The decision and order of the Board are reported at 225 NLRB No. 63
 
 
 [2]
 Endurall alone filed exceptions before the NLRB to the Administrative Law Judge's findings. Similarly, only Endurall has filed an answer to the Board's application for enforcement of its order. Thus, the NLRB's application for enforcement of its order of June 30, 1976, must be granted insofar as it applies to Bell, Richard Balestrieri as agent for Bell, and Paul Moskowitz, receiver for Bell. See NLRB v. Good Foods Mfg. & Processing Corp., Chicago Lamb Packers, Inc., 492 F.2d 1302 (7th Cir. 1974); Fed.R.App.P. 15(b)
 Endurall suggests on appeal that enforcement against Bell should be denied since Bell is no longer an operating business. The fact that Bell is no longer in business does not require that enforcement of the Board's order be denied. NLRB v. Electric Steam Radiator Corp., 321 F.2d 733 (6th Cir. 1963); NLRB v. Advanced Business Forms Corp., 474 F.2d 457 (2d Cir. 1973); NLRB v. Kostilnik, 405 F.2d 733 (3rd Cir. 1969); NLRB v. Family Heritage Home Beaver Dam, Inc., 491 F.2d 347 (7th Cir. 1974).
 
 
 [3]
 The Board found that the purported closing of Bell and discharge of employees was discriminatorily motivated and constituted a violation of § 8(a) (3) and (1). In addition, the Board found that Bell violated § 8(a)(5) and (1) by committing the following acts: unilaterally modifying and repudiating its contract with the union; attempting to bypass the union and deal directly with the employees; threatening employees and posing questions to employees in an effort to undermine the union; and discharging employees in an effort to discourage union membership
 
 
 [4]
 In addition to continued control or ownership of a new business by the prior owners of an old business, disguised continuance has also been found where the new business " . . . allows itself to become a substitute in carrying on the operations, or some of them, of the old employer, under a relationship serving to benefit the latter's owners and intended as one of cooperation with them in evading the consequences of the unfair labor practices committed." Ozark Hardwood Company, 282 F.2d at 5