NECA–IBEW PENSION TRUST FUND, NECA–IBEW Welfare Trust Fund, and International Brotherhood of Electrical Workers Local Union No. 725, Plaintiffs,

v.

BAYS ELECTRIC, INC., Premier Electrical Contractors, Inc., and their successors in interest, Dinki Electric Inc., Bays Company, LLC, and Denki Electric Corporation, Inc., Defendants.

Case No. 08–CV–2133.

United States District Court, C.D. Illinois, Urbana Division.

Sept. 20, 2012.

James P. Moody, John A. Wolters, Cavanagh & O'Hara, Springfield, IL, for Plaintiffs.

Michael E. Avakian, The Avakian Law Firm, Washington, DC, for Defendants.

## OPINION

MICHAEL P. McCUSKEY, District Judge.

This case is before the court for ruling following the bench trial held on January 23, 24, and 25, 2012. This court has carefully reviewed the Stipulation of Uncontested Material Facts included in the Pretrial Order, the transcript of the trial, the exhibits admitted into evidence, and the written arguments submitted by the parties. Following this careful and thorough consideration, this court rules in favor of Plaintiffs, NECA–IBEW Pension Trust Fund, NECA–IBEW Welfare Trust Fund and International Brotherhood of Electrical Workers Local Union No. 725, and against Defendants, Bays Electric, Inc. (Bays Electric), Premier Electrical Contractors, Inc. (Premier Electric), Dinki Electric, Inc. (Dinki Electric), Bays Company, LLC (Bays Company) and Denki Electric Corporation, Inc. (Denki Electric), on all claims.

## I. PROCEDURAL HISTORY

On June 16, 2008, Plaintiffs filed their Complaint (# 1) in this court against Bays Company, LLC d/b/a Bays Electric, Inc., Premier Electric, and their successor in interest, Denki Electric. The Complaint stated that the action was brought pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. § 1145, and the Labor Management Relations Act of 1947 (LMRA), as amended, 29 U.S.C. § 185(a). Plaintiffs attached copies of the letters of assent signed by Bays Electric and Premier Electric and the trust agreements which obligated Bays Electric and Premier Electric to pay contributions to the Pension Fund and Welfare Fund. Plaintiffs alleged that the controlling officers of Bays Electric and Premier Electric became the controlling officers of Denki Electric. Plaintiffs

alleged that Denki Electric was the disguised continuation of its predecessor companies and was bound by the agreements to make contributions to the Pension Fund and Welfare Fund. Plaintiffs asked that Defendants be ordered to remit contribution reporting forms and the required contributions to the Pension Fund and Welfare Fund. Plaintiffs also sought delinquent contributions to the Pension Fund and Welfare Fund, liquidated damages, interest, and attorney's fees.

On November 20, 2008, Plaintiffs filed an Amended Complaint (# 18). In December 2008, Defendants Bays Electric, Denki Electric and Premier Electric filed Answers to the Amended Complaint (# 28, # 31, # 32). There were problems with discovery in this case and, on January 26, 2010, Magistrate Judge David G. Bernthal entered a Text Order and granted Plaintiffs' Motion to Compel. Judge Bernthal ordered Defendants to comply with the Order within 14 days and further ordered that the discovery period would be extended. On January 28, 2010, Judge Bernthal granted Plaintiffs' Motion to add Dinki Electric as a party to this action.[1] On April 1, 2010, 2010 WL 1416879, this court entered an Opinion (# 70) and denied Defendants' Motion for Summary Judgment (# 47). Defendants argued that they were entitled to summary judgment because this case is barred by a limitation of action pursuant to § 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b). This court specifically concluded that the six-month statute of limitations discussed in Defendants' Motion for Summary Judgment was inapplicable to this case, finding that failing to remit funds to the Pension Fund and Welfare Fund does not constitute an unfair labor practice as described in 29 U.S.C. § 158, so that an action to enforce an agreement to remit funds is not subject to the six-month statute of limitations. On April 30, 2010, this court entered an Order (# 75) and denied Defendants' Request for Clarification (# 72), which challenged this court's reasoning and conclusion regarding the statute of limitations. This court referred to Plaintiffs' Response to the Motion to Clarify (# 74) and stated:

> If this court's Opinion was not adequately clear, Plaintiffs thoroughly explained why the six-month statute of limitations applicable to an unfair labor practice or duty of fair representation claim under the National Labor Relations Act does not apply to Plaintiffs' claim, which is a delinquent contribution collection action based on a written contract and brought pursuant to ERISA, 29 U.S.C. § 1145. This court thoroughly agrees with Plaintiffs' clear explanation of this court's ruling.

On May 7, 2010, Plaintiffs filed a Second Amended Complaint (# 76). Plaintiffs added Dinki Electric as a Defendant and clarified that Bays Company is a successor in interest to Bays Electric. Plaintiffs alleged that Dinki Electric was the disguised continuation of its predecessor companies, Bays Electric and Premier Electric. Plaintiffs also alleged that Bays Company is the disguised continuation of its predecessor companies, Bays Electric and Dinki Electric and that Denki Electric is the disguised continuation of its predecessor companies, Premier Electric and Dinki Electric.

On July 8, 2010, Dinki Electric filed a Motion to Dismiss for failure to properly effect service within 120 days (# 83). Judge Bernthal entered a Report and Recommendation (# 95) which recommended that the Motion to Dismiss be denied. On October 29, 2010, 2010 WL 4683980, this

---

**1.** There was understandable confusion regarding whether Denki Electric and Dinki Electric were the same or separate companies.

court entered an Order (# 98) which accepted the Report and Recommendation and denied the Motion to Dismiss. This court stated that Plaintiffs had notified the court that they had effected service on Dinki Electric. This court stated:

Plaintiffs stated that Dinki's registered agent is Bill Hillis. According to the information Dinki provided to the Indiana Secretary of State, the registered agent's address is 650 E. Carmel Drive in Carmel, Indiana. Bill Hillis is also listed as the president of the company, with the same street address of 650 E. Carmel Drive. Plaintiffs stated that they retained Express Process Services, Inc. (Express) to serve Dinki. Plaintiffs provided documentation showing that Express's process server went to 650 E. Carmel Drive to serve Dinki's registered agent with the Summons and Second Amended Complaint. The process server could not find Hillis at that location. The other tenants in the building at 650 E. Carmel Drive never heard of Dinki Electric., Inc., or Bill Hillis. Plaintiffs stated that, accordingly, Dinki has failed to maintain a registered agent at the address shown in the Indiana Secretary of State's records.

Plaintiffs stated that they therefore have served Dinki by certified mail, return receipt requested. Plaintiffs stated, and provided documentation to show, that service was mailed to the president of the company, Bill Hillis, at 1173 Crawford Street, Terre Haute, IN 47807, which is the company's address according to the Indiana Secretary of State's records. Plaintiffs stated that they also mailed additional copies to the other addresses shown on the Secretary of State's records. Plaintiffs argued that they had effected service on Dinki under the applicable provisions of the Indiana Code.

This court stated that it "agree[d] wholeheartedly with Judge Bernthal that Dinki should not be rewarded for its attempts to evade service of process" and that "[u]nder the unique circumstances present here, this court concludes that Plaintiffs have effected service on Dinki." On November 5, 2010, Dinki Electric filed its Answer to the Second Amended Complaint (# 99).

The parties filed cross motions for summary judgment and, on September 23, 2011, 2011 WL 4435575, this court entered an Opinion (# 115) which denied the motions. This court stated that Plaintiffs brought this action pursuant to ERISA and the LMRA to recover contributions to the Pension Fund and Welfare Fund which were required by written agreements enforceable against Bays Electric and Premier Electric. This court also stated, citing pertinent authority, that the Pension Fund and Welfare Fund are multiemployer plans and may sue under ERISA to recover required contributions in federal court. In addition, this court stated that, since the breach of a contract between a union and an employer is actionable under section 301 of the LMRA, Plaintiffs can base their claim on this section as well as ERISA.

This court then rejected Defendants' argument that this court lacked subject matter jurisdiction over Plaintiffs' claim. This court again rejected (for the third time) Defendants' argument that Plaintiffs' claim was barred by a six-month statute of limitations. This court also rejected Defendants' argument that Dinki Electric, Denki Electric and Bays Company cannot be liable under an alter ego theory, a successor employer theory or a single employer theory. This court concluded that the evidence presented on summary judgment could support a conclusion that Dinki Electric, Denki Electric and Bays Company were continuations of Premier Electric and Bays Electric and therefore liable for contributions to Plaintiffs. This court also

specifically noted untrue statements and direct contradictions in the arguments and evidence provided by Defendants.

However, this court also rejected Plaintiffs' argument that they were entitled to summary judgment as to liability. This court stated:

> Plaintiffs have made convincing arguments regarding the applicability of the alter ego doctrine and the single employer doctrine to the facts of this case. However, in considering Plaintiffs' Cross Motion for Partial Summary Judgment as to Liability, this court must construe the evidence in the light most favorable to Defendants and draw all reasonable inferences in favor of Defendants. Defendants have presented some evidence, including deposition testimony, to support their position that the Defendant companies are separate and should not be liable for contributions to the Pension Fund and Welfare Fund. In ruling on Plaintiffs' Motion for Partial Summary Judgment, this court cannot make credibility determinations, weigh the evidence or decide which inferences to draw from the facts. *George v. Kraft Foods Global, Inc.,* 641 F.3d 786, 799 (7th Cir.2011). This court therefore must conclude that Plaintiffs have not shown that there is no genuine dispute of material fact. Accordingly, Plaintiffs are not entitled to summary judgment as a matter of law regarding Defendants' liability.

The case remained scheduled for a final pretrial conference on January 5, 2012, and a bench trial on January 23, 2012.

On January 3, 2012, Defendants filed a Notice of Interlocutory Appeal (# 121). This court entered an Opinion (# 122) and, finding that Defendants had "missed a few steps in their attempt to file an interlocutory appeal," ordered that the Notice of Interlocutory Appeal was stricken.

On January 5, 2012, a final pretrial conference was held before this court. This court entered the lengthy Pretrial Order (# 125) submitted by the parties. The Pretrial Order included a Joint Statement of Uncontested Facts.

The bench trial commenced on January 23, 2012. This court denied Motions in Limine filed by Defendants the night before trial. This court agreed with Plaintiffs that the motions were untimely and that Defendants' asserted lack of knowledge about the witnesses' testimony was caused by their own failure to timely provide requested information and to depose witnesses disclosed by Plaintiffs. Evidence was presented on January 23, 24, and 25, 2012. After the transcripts from the proceedings were completed, a briefing schedule was set by the court.

Subsequently, Defendants' counsel Bruce F. Mills, who had represented Defendants throughout the proceedings in this court, filed Motions to Withdraw. Attorney Mills asked to be allowed to withdraw "due to medical conditions that now prevent his continued practice of law." On April 12, 2012, a hearing was held and this court allowed Attorney Mills to withdraw. Attorney Michael Ernest Avakian entered his appearance on behalf of Defendants and a new briefing schedule was set. On June 4, 2012, Plaintiffs filed their Proposed Findings of Fact and Conclusions of Law (# 149). On July 16, 2012, Defendants filed their Proposed Findings of Fact and Conclusions of Law (# 150). On August 6, 2012, Plaintiffs filed their Reply to Defendants' Proposed Findings of Fact and Conclusions of Law (# 151). All evidence has been received and the case is fully briefed and ready for ruling.

This court notes that this case commenced on June 16, 2008, more than four years ago. The docket reflects that delays were caused by Defendants' counsel's resistance to discovery requests, understandable confusion regarding the Defendant

entities ("Denki Electric Corporation, Inc." and "Dinki Electric, Inc.," as well as "Bays Electric, Inc." and "Bays Company, LLC"), and attempts to avoid the service of process by Dinki Electric. In addition, Defendants' counsel unsuccessfully attempted to further delay the case by filing a Notice of Interlocutory Appeal two days before the final pretrial conference.

## II. FINDINGS OF FACTS [2]

Terry Bays (Bays) was the sole owner of Bays Electric, which he incorporated in 1990. Bays Electric provided services as an electrical contractor. Bays was responsible for hiring and firing, personnel, management, supervising employees, and performing electrical work with his tools for Bays Electric. Bays Electric had no equipment and worked primarily in the Terre Haute, Indiana, area. On September 25, 1990, Bays, as president of Bays Electric, signed two letters of assent and authorized the Central Indiana Chapter of the National Electrical Contractors Association (NECA) as its collective bargaining representative for all matters pertaining to the labor agreements between NECA and the International Brotherhood of Electrical Workers Local Union No. 725 (IBEW Local 725). One letter of assent related to the Inside collective bargaining agreement between NECA and IBEW Local 725 and the other letter related to the Residential collective bargaining agreement between NECA and IBEW Local 725. Under the terms of the Inside and Residential agreements, Bays Electric was obligated to make contributions to the NECA–IBEW Pension Trust Fund (Pension Fund) and the NECA–IBEW Welfare Trust Fund (Welfare Fund) for its employees. In April 2006, Bays formed Bays Company LLC. Bays Electric made contributions for its employees, including Bays, until November 2006. In November 2006, Bays Electric submitted a monthly report for electrical contractors and paid for the following individuals who were employed by the company as electricians: Bays, Tim Bays (Bays' brother), Nathan Brown, Ernest Tessman, and Roy Smith.

Plen Smith (Smith) and his wife Deborah Smith were the sole owners of Premier Electric, which was incorporated in 1992. Premier Electric was a commercial and residential electrical contractor and worked primarily in the Terre Haute area. Deborah Smith was employed as a school teacher and her only role for Premier Electric was to sign checks. Smith was responsible for bidding jobs, supervising employees, working with his tools, payroll, billing, accounts payable, and labor relations. Smith also shared responsibility for signing checks. Premier Electric had one vehicle but no equipment. On December 3, 1992, Deborah Smith, as president of Premier Electric, signed two letters of assent and authorized NECA as its collective bargaining representative for all matters pertaining to the labor agreements between NECA and IBEW Local 725. One letter of assent related to the Inside collective bargaining agreement between NECA and IBEW Local 725 and the other letter related to the Residential collective bargaining agreement between NECA and IBEW Local 725. Under the terms of the Inside and Residential agreements, Premier Electric was obligated to make contributions to the Pension Fund and the Welfare Fund for its employees. Premier

---

**2.** The facts are taken from the Stipulation of Uncontested Material Fact attached to the Pretrial Order (# 125), the testimony presented at trial, and the documents admitted into evidence. This court has reviewed the proposed findings of fact provided by the parties and has included those facts which are relevant to the issues before the court and are adequately supported by the record. This court has not included any of the facts listed by the parties where the record citation does not support the factual statement.

Electric made such contributions for its employees, including Smith, until November 2006. In November 2006, Premier Electric submitted a monthly report for electrical contractors and paid contributions for the following individuals who were employed by the company as electricians: Smith, Jim Carlson, Johnny Crowe, and James Smith. Smith testified that he spent $8,000 to defend against an unfair labor practice charge in March 2006 and decided after that to "shut Premier down."

On June 28, 2006, Bays sent a letter to NECA and stated that "effective immediately, Bays Electric, Inc. hereby terminates any authority it may have previously given to [NECA] to negotiate with the [IBEW] on behalf of Bays Electric, Inc." This was shortly after he had formed Bays Company, LLC. Bays testified that Bays Company was dormant from April 2006 to January 2008. On June 28, 2006, Deborah Smith sent a letter to NECA and stated that "effective immediately, Premier Electrical Contractors, Inc. herby [sic] terminates any authority it may have previously given to [NECA] to negotiate with the [IBEW] on behalf of Premier Electrical Contractors, Inc."

A new Residential agreement had taken effect on June 1, 2006, and was in effect through May 31, 2008. The pertinent Inside agreement had taken effect on December 1, 2004, and was in effect through November 30, 2006. Todd Thacker, Business Manager for IBEW Local 725, testified that the letters from Bays and Deborah Smith terminating NECA's authority had no effect on the Residential agreement, which was in effect until May 31, 2008. The letters meant that the union would have to bargain a new Inside Agreement directly with Bays Electric and Premier Electric prior to the termination of the agreement on November 30, 2006. Thacker testified that, in terms of labor relations, he always dealt with Bays for Bays Electric and Smith for Premier Electric.

On August 28, 2006, Thacker sent a letter to Bays which stated that the union had received notification that Bays Electric had chosen not to have NECA represent it in negotiations. Thacker stated that, pursuant to the provisions of the Inside agreement, "this is notification of the Local Union's desire to change the agreement no later than November 30, 2006." Also on August 28, 2006, Thacker sent the same letter to Smith regarding Premier Electric. No negotiations took place between IBEW Local 725 and Bays or Smith. On October 23, 2006, Thacker sent letters to Bays and Smith and stated that the union requested papers from the Council on Industrial Relations for the Electrical Contracting Industry (CIR) due to stalled negotiations. In each letter, Thacker stated that the CIR was scheduled to hear the case the week of November 13, 2006. Thacker also asked Bays and Smith to contact him so an interim meeting to resolve negotiations could be scheduled. No interim meeting was held, and both Bays and Smith testified that they were aware of the hearing before the CIR. The hearings regarding Bays Electric and Premier Electric were held on November 13, 2006. Thacker attended the hearings but Bays and Smith did not. The CIR issued a Decision in each case which stated that the "parties are directed to sign and implement immediately the Inside Agreement which is attached hereto and hereby made a part of this decision." The effect of this decision was to extend IBEW Local 725's Inside labor agreement with Bays Electric and Premier Electric for two years, until November 30, 2008.

Neither Bays Electric nor Premier Electric made any attempt to vacate the CIR's November 13, 2006, decisions. On Novem-

ber 14, 2006, Bays sent a letter to IBEW Local 725 which stated:

Effective November 22, 2006 Bays Electric, Inc. is lying [*sic*] off all of its employees and will thereafter have no employees. Therefore it is revoking its recognition of IBEW Local 725 as the collective bargaining agent representing its employees and rescinding any and all collective bargaining agreements which may have arisen out of such recognition because it no longer has any employees.

On November 17, 2006, Deborah Smith sent an essentially identical letter to IBEW Local 725 which stated:

Effective November 29, 2006 Premier Electrical Contractors, Inc. is laying off all of its employees and will thereafter have no employees. Therefore, it is revoking its recognition of IBEW Local 725 as the collective bargaining agent representing its employees and rescinding any and all collective bargaining agreements which may have arisen out of such recognition because it no longer has any employees.

Thacker testified that IBEW Local 725 did not accept these letters as terminating the collective bargaining agreements with Bays Electric and Premier Electric because the letters were not in compliance with the termination provisions contained in the labor agreements, which require 90 days written notice prior to the expiration of the contract.

William Hillis incorporated Dinki Electric in September 2006. Dinki Electric's corporate form did not provide for directors, bylaws or minutes. Hillis did not contribute any working capital for Dinki Electric. Hillis has been friends with Bill Roach, Smith's father-in-law, for many years. Hillis' daughter grew up with Smith's wife, Deborah Smith, in the 1960s and 1970s. Deborah Smith's mother (Roach's wife) is Japanese. Hillis was in his 70's at the time Dinki Electric was formed. He was semi-retired and had spent his career working in the financial services, banking and underwriting industries. Hillis is not an electrician and had never worked in the electrical business. In 2006, Hillis was involved in helping secure financing for two real estate developments, the Guilford project and the Mansion Row project. Both projects were located in the Indianapolis area. Hillis had a conversation with Roach about the Mansion Row project. Hillis testified that after he had talked to Smith and offered him a job doing electrical work, Smith brought up the name "Dinki" and said it meant electric in Japanese.

After November 30, 2006, Dinki Electric employed electricians including: Bays, Smith, Timothy Bays (Bays' brother), Chris Bays (Bays' son), James Smith and James Carlson (both of whom had previously worked for Premier Electric). Smith and Bays were paid at the wage rate of $36.00 per hour. Other electricians were paid at the rate of $11.00 per hour. Dinki Electric was a commercial and residential electrical contractor. Hillis was aware that Bays and Smith had previously been affiliated with a labor union. Smith and Bays managed the day-to-day operations of Dinki Electric. Bays supervised electricians on jobs for Dinki Electric and also estimated work projects. Smith performed electrical work, marketing, estimating, and supervised employees for Dinki Electric. Smith also handled hiring and personnel matters and rented any equipment needed by Dinki Electric. All of the employees of Dinki Electric used their own personal trucks. Smith acquired office space for Dinki Electric in Terre Haute. The Dinki Electric office was listed in the Terre Haute telephone book. Dinki Electric had a website and a copy of the information included on the website was introduced into evidence. The website stated "Denki Electric" at the top, listed the Terre Haute office as the "main"

location and also listed an Indianapolis location. The website provided contact information for Bays and Smith and listed Smith and Bays as the "Dinki Managing Team." Smith testified that he initiated the website for Dinki Electric and reviewed the website upon completion. Smith testified that he could not get the company who created the website to correct it.

Smith had possession of the only signature stamp for Dinki Electric and paid the bills for Dinki Electric. Smith made all deposits and kept most of the financial records for Dinki Electric. Smith maintained QuickBooks for Dinki Electric and was also responsible for obtaining insurance for Dinki Electric. Smith testified that tax information for Dinki Electric went to the office in Indianapolis. Hillis did not interview applicants for employment and did not know any of Dinki Electric's employees, other than Smith and Bays. He did not know what Dinki Electric's employees did as employees and did not know if Dinki Electric served both residential and commercial clients. Hillis did not know how Dinki Electric advertised and did not know who maintained Dinki Electric's cash receipts and disbursement journals. Hillis was never in the Dinki Electric office in Terre Haute. Dinki Electric paid Hillis $10,200 in one year for "advisory services." This court concludes that Hillis' testimony established that he had very little to do with the management of Dinki Electric and that any testimony attempting to establish that he had a role in the operation of Dinki Electric was not credible.

Dinki Electric provided the electrical work for the Guilford project and the Mansion Row project. Hillis recommended Dinki Electric for these projects and was responsible for getting this work for Dinki Electric. There is no evidence that Hillis got any other projects for Dinki Electric in Indianapolis. Dinki Electric also per-formed electrical work in Terre Haute. A document was admitted into evidence which was a fax sent from Dave Crockett to Thacker on April 4, 2007. The document shows that, on June 27, 2006, Bays Electric provided an estimate of $6,850.00 for electrical work to be performed for the Vigo County Treasurer in Terre Haute. On March 22, 2007, Dinki Electric submitted a bill for the work for the Vigo County Treasurer's office in the amount of $6,850.00. Thacker testified that he observed Bays, Chris Bays and James Carlson performing electrical work at the Sycamore Terrace shopping mall in 2007. Thacker also testified that he observed Bays and another employee at the Honey Creek Square Mall job site in Terre Haute. Smith testified that almost all of Dinki Electric's work was performed in Indianapolis. Defendants did not provide any documentation to support this estimate. This court finds that Smith's self-serving, unsupported testimony that most of Dinki Electric's work was performed in the Indianapolis area is not credible.

Thacker testified that IBEW Local 725 and the related NECA Chapters are parties to the Sixth District Portability Agreement, which covers Terre Haute and Indianapolis. Thacker testified that Terre Haute is on Interstate 70 and is a quick commute to Indianapolis. Thacker testified that, under the terms of the Portability Agreement, Bays Electric and Premier Electric are allowed to travel and perform electrical work in the Indianapolis jurisdiction using members from IBEW Local 725. Portability allows the employers and union members to move around and cross jurisdictional boundaries. The Portability Agreement generally allows up to four members of one local to travel with their employer to another jurisdiction. The Portability Agreement requires the employer to pay the higher wage package to maintain a level playing field in the jurisdiction where the work is performed. Un-

der the Portability Agreement, the fringe benefit contributions are paid to the Host Local Union (Indianapolis) benefit funds and those funds reciprocate the money back to the employee's home Local Union, IBEW Local 725. The Inside agreement and Residential agreement incorporate the Portability Agreement to allow employers to be more competitive and portable and go from one jurisdiction to another.

The Inside agreement and Residential agreement also contain "subletting clauses" which prohibit Bays Electric and Premier Electric from subletting, assigning, or transferring work to a non-union company such as Dinki Electric.

Smith, Bays, and Hillis all testified that Dinki Electric had ceased operations by December 2008.[3] Dinki Electric was formally dissolved in 2010. After December 2008, Smith and Bays were no longer employed by Dinki Electric and collected unemployment. Smith then began providing electrical services as a working owner electrician for Denki Electric, which he incorporated on April 2, 2007. Smith testified that "Denki" is Japanese for "electric." Denki Electric provides services as an electrical contractor and employed James Carlson, who was a former employee of Premier Electric and Dinki Electric. Smith runs the day-to-day business of Denki Electric, including marketing, estimating, billing, accounting, payroll, supervision, and labor relations. Bays began providing electrical services as a working owner electrician for Bays Company. Bays Company provides services as an electrical contractor and employs Timothy Bays, a former employee of Bays Electric and Dinki Electric. Bays runs the day-to-day business of Bays Company, including marketing, estimating, billing, accounting, payroll, supervision and labor relations.

A check detail for Denki Electric was admitted into evidence which showed that, in October, November and December 2009, Denki Electric paid Dinki Electric a total of $40,656.91 for work as a subcontractor. Smith was asked to explain this exhibit and testified that Dinki Electric billed Denki Electric for services performed on commercial property.[4] Smith stated that some of the work billed was performed on a property that he personally owns in Terre Haute and that he did not remember where the other work was performed. Smith testified that he called Hillis when he needed to subcontract work to Dinki Electric. Hillis testified that Dinki Electric was not operating in 2009 and 2010 and stated that, after Smith left Dinki Electric, it was dormant. When confronted with the exhibit showing payments by Denki Electric to Dinki Electric in 2009, Hillis testified that he did not know anything about it. This court concludes that Smith's testimony regarding Dinki Electric performing work for Denki Electric, which was contradicted by Hillis, was evasive and not credible. This court further concludes that the check detail, and Smith's evasive trial testimony, is strong evidence that Smith was using Dinki Electric in 2009 to hide the labor performed by Denki Electric.[5] In addition, this court concludes

---

3. Smith also testified that Dinki Electric performed some work after that but this court does not find that testimony credible.

4. Smith initially testified that Denki Electric "[m]aybe" subbed some work to Dinki Electric in 2008 "[f]or service on a house." Smith changed his story when confronted with the check detail.

5. This court notes that, in this litigation, Defendants have tried to claim that Denki Electric has not had any employees since November 2006, a claim which this court finds patently false. This court concludes that Smith was trying to hide the fact the Denki Electric had employees by paying costs for labor to Dinki Electric. In their Proposed Findings of Fact and Conclusions of Law (# 150), Defendants stated that "Denki had

that this testimony supports a conclusion that Smith, along with Bays, was completely in charge of Dinki Electric and that Smith used Dinki Electric and Denki Electric to evade Premier Electric's obligations under the labor agreements to pay contributions to the Pension Fund and Welfare Fund.

Steve Povse, a certified public accountant, was found to be qualified as an expert witness in the areas of payroll examinations and audits of employer records to calculate what contribution payments are due to the pension and welfare benefit plans. Dinki Electric failed to provide the normal records used in a routine payroll examination. Dinki Electric failed to provide payroll journals with employee wage rates, hours worked by employees and records which describe the type of work performed. In cases where the employer does not provide hours worked by employee, the methodology used by experts is to divide gross wages by the wage rate to determine the hours worked. Then the hours worked are multiplied by the contribution rates to determine the contributions due. Tari L. Stower testified that she is the internal control supervisor for the NECA–IBEW Welfare Trust Fund. She testified regarding the penalties and interest required under the terms of the applicable Trust Agreements. She also testified that notices of penalties and interest were sent to Bays Electric and Premier Electric. Based upon Povse's and Stower's testimony and the exhibits admitted, Defendants owe Plaintiffs contributions in the amount of $319,429.43 for the period from November 1, 2006, through December 31, 2008. The amount owed for penalties is $71,024.14 and the amount owed for interest is $118,098.22, for a total of $189,122.36. These are the damages Plaintiffs are seeking from Defendants.

## III. CONCLUSIONS OF LAW

### A. STANDING AND JURISDICTION

Plaintiffs, the Pension Fund and the Welfare Fund, are employee benefit plans administered pursuant to the terms and provisions of the Agreements and Declarations of Trust creating the Funds and are required to be maintained and administered in accordance with the provisions of the LMRA and ERISA. Plaintiff IBEW Local 725 is a labor organization within the meaning of the LMRA. Plaintiffs had standing to bring this action pursuant to ERISA and the LMRA to recover contributions to the Pension Fund and Welfare Fund which were required by written agreements enforceable against Bays Electric and Premier Electric. Under section 515 of ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. The Pension Fund and Welfare Fund are multiemployer plans and may sue under ERISA to recover required contributions in federal court. *Line Constr. Benefit Fund v. Allied Elec. Contractors, Inc.*, 591 F.3d 576, 579–80 (7th Cir.2010); *see also Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665, 667 (7th Cir.2007), *overruled on other grounds* in *Pakovich v. Verizon Ltd. Plan*, 653 F.3d 488 (7th Cir.2011); *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA*, 502 F.3d 740, 744–45 (7th Cir.2007); *Anderson v. Liles,*

no employees or time records ..., except for Carlson *after around February 2010* " (emphasis in original). This court agrees with Plaintiffs that Defendants provided no evidence to support this assertion. This court concludes that this is a false, misleading statement.

774 F.Supp.2d 902, 906–07 (N.D.Ill.2011). And, since the breach of a contract between a union and an employer is actionable under section 301 of the LMRA, 29 U.S.C. § 185(a), Plaintiffs can base their claim on this section as well as ERISA. *Sullivan,* 504 F.3d at 667; *see also IBEW, Local 481 v. Sign–Craft, Inc.,* 864 F.2d 499, 503 (7th Cir.1988).

## B. EXISTENCE OF EFFECTIVE LABOR AGREEMENTS

 Based upon the evidence presented, this court concludes that the effect of the CIR decisions was to extend the Inside agreements with Bays Electric and Premier Electric for two years, until November 30, 2008. At trial, this court repeatedly stated that no timely challenge had been made to the CIR decisions and the decisions could not be challenged at trial. *See McKinney Restoration, Co. v. Ill. Dist. Council No. 1 of Int'l Union of Bricklayers & Allied Craftworkers, AFL–CIO,* 392 F.3d 867, 869 (7th Cir.2004) (failure to challenge an arbitration award within the 90 day limitations period renders the award final); *see also Int'l Union of Operating Eng'rs, Local 150, AFL–CIO v. Rabine,* 161 F.3d 427, 432 (7th Cir.1998); *Sullivan v. Gilchrist,* 87 F.3d 867, 871 (7th Cir.1996). This court therefore rejects the arguments Defendants have raised challenging the validity of the CIR decisions. This court additionally agrees with Plaintiffs that many of the issues raised were not included in the Pretrial Order and cannot be considered for that reason as well. *See Gorlikowski v. Tolbert,* 52 F.3d 1439, 1443–44 (7th Cir.1995) (the pretrial order is treated as superseding the pleadings and establishes the issues to be considered at trial).

This court concludes that Bays Electric and Premier Electric were bound by the Residential Agreement, which was in effect until May 30, 2008.[6] Bays Electric and Premier Electric were also bound by the Inside Agreements which were extended to November 30, 2008, by the CIR decisions. This court agrees with Plaintiffs that Defendants have not effectively terminated the agreements pursuant to the terms of the agreements so they continue to be in effect.[7]

## C. ALTER EGO, SUCCESSOR AND SINGLE EMPLOYER LIABILITY

The question before this court is whether Dinki Electric, Bays Company and Denki Electric are required to make contributions under the terms of the labor agreements. This court has previously noted that both the Pension Fund and Welfare Fund are multiemployer plans. The Seventh Circuit recently stated:

A multiemployer pension plan is created when various employers agree to make contributions to a common pension fund on behalf of their respective employees. Congress has recognized that the reliability of multiemployer pension funds is of extreme importance to the workers who rely on them and of vital importance to the economic and social well-being of the Nation. To achieve and maintain the requisite level of financial security, multiemployer pension plans must maintain adequate funding levels to ensure their capacity to fund

**6.** This court agrees with Plaintiffs that the termination of the Residential Agreement prior to this date was not an issue included in the Pretrial Order. Therefore, any issue regarding the termination of the Residential

Agreement will not be considered by this court.

**7.** This court notes that the letters sent by Bays and Smith that they were laying off all of their employees were simply untrue.

the benefits of workers who have a legitimate expectation that those funds will be available to meet their needs. *Cent. States Se. & Sw. Areas Pension Fund v. O'Neill Bros. Transfer & Storage Co.,* 620 F.3d 766, 767–68 (7th Cir.2010); *see also Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac,* 920 F.2d 1323, 1329 (7th Cir.1990) (recognizing the importance of the collection of multiemployer plan contributions).

### 1. ALTER EGO

■ A court may therefore determine whether a company is liable for contributions as the alter ego of the company contractually obligated to make the contributions. *See Trs. of Pension, Welfare & Vacation Fringe Benefit Funds of IBEW Local 701 v. Favia Elec. Co.,* 995 F.2d 785, 789 (7th Cir.1993); *Anderson,* 774 F.Supp.2d at 909. The alter ego doctrine turns upon "the existence of a disguised continuation of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement." *Favia Elec. Co.,* 995 F.2d at 789, *quoting Int'l Union of Operating Eng'rs v. Centor Contractors,* 831 F.2d 1309, 1312 (7th Cir. 1987); *Anderson,* 774 F.Supp.2d at 909. "[U]nlawful motive or intent are critical inquiries in an alter ego analysis." *Favia Elec. Co.,* 995 F.2d at 789; *Anderson,* 774 F.Supp.2d at 909.

■ The alter ego analysis is very fact intensive and centers around several factors which involve whether the enterprises share "substantially identical: (1) management; (2) business purposes; (3) operations; (4) equipment; (5) customers; (6) supervision; and (7) ownership." *Chicago Carpenters Pension Fund v. Vacala Masonry, Inc.,* 946 F.Supp. 612, 617 (N.D.Ill.1996), *quoting Bd. of Trs. of Chicago Plastering Institute Pension Tr. Fund v. William A. Duguid Co.,* 761 F.Supp. 1345, 1348 (N.D.Ill.1991). "No one factor is determinative of the issue and

thus, alter-ego status may be established where one or more of the elements is missing." *Vacala Masonry,* 946 F.Supp. at 617. Thus, an alter ego relationship may exist even though there is no evidence of actual common ownership. *Cent. States, Se. & Sw. Areas Pension Fund v. Sloan,* 902 F.2d 593, 597 (7th Cir.1990).

■ In denying Defendants' Motion for Summary Judgment, this court stated:

This court agrees with Plaintiffs that the evidence presented in this case could support a conclusion that Terry Bays and Plen Smith were dissatisfied as union electrical contractors and sought to avoid the obligations under the IBEW Local 725 labor agreements with their respective companies, Bays Electric and Premier Electric. The evidence could support a finding that, in order to avoid these obligations, they became "employees" of Dinki Electric, a company that they ran even though Bill Hillis was named as the owner. Based upon the essentially identical letters sent by Bays Electric and Premier Electric in their attempts to withdraw from the union, a trier of fact could find that Terry Bays and Plen Smith were working together to get out of the union and continue their work as electrical contractors without union obligations. The evidence could also support a finding that Denki Electric and Bays Company were continuations of the business, again created to avoid the obligations of Bays Electric and Premier Electric.

This court concludes that that is exactly what the evidence presented at trial established. The evidence showed that, in March 2006, Smith paid $8,000 to defend against an unfair labor practice charge and decided to "shut Premier [Electric] down," and thereby avoid his union obligations. This court concludes that Bays also decided that he wanted to avoid his union obli-

gations and formed Bays Company, LLC, in April 2006. Subsequently, in June 2006, Bays and Smith (by his wife Deborah) sent almost identical letters to NECA stating that they were terminating NECA's authority to bargain on behalf of Bays Electric and Premier Electric with IBEW Local 725. Shortly thereafter, Smith met with Hillis, a close friend of his father-in-law, who was involved in two developments in Indianapolis and was in a position to recommend a contractor to provide electrical work on the developments. Hillis then set up Dinki Electric in September 2006. Based upon the evidence presented, and this court's determinations regarding credibility, this court concludes that Hillis had no involvement in the management of Dinki Electric and was acting solely as a straw man when he set up Dinki Electric.

Bays and Smith failed to enter into negotiations with IBEW Local 725 or attend the CIR hearing, although they both admitted they had notice of the hearing. On November 13, 2006, the Inside agreements were extended by the CIR decisions to November 30, 2008. Bays and Smith (through Deborah) then sent letters stating that they were laying off all of their employees and rescinding their labor agreements. Bays and Smith, however, did not shut down their businesses and continued performing work as electrical contractors. They, and some of their employees, first performed work as electrical contractors for Dinki Electric. This court concludes that Bays and Smith controlled and managed Dinki Electric and Hillis had no involvement in the management of the company. Hillis was paid by Dinki Electric for his services as a figurehead or strawman. Bays and Smith did take advantage of Hillis' connections with the two developments in Indianapolis to get work as electrical contractors on the developments. This court concludes that Bays Electric and Premier Electric could have performed this work, and made the appro-

priate contributions to the Pension Fund and Welfare Fund, pursuant to the portability provisions in the applicable agreements. This court further concludes that the evidence showed that Dinki Electric also performed work as an electrical contractor in the Terre Haute area. Evidence was presented that work was performed by Dinki Electric in Terre Haute and, as noted, this court did not find credible Smith's testimony that most of Dinki Electric's work was performed in Indianapolis.

After Dinki Electric stopped operations in December 2008, Bays and Smith continued to perform work as electrical contractors in Terre Haute as owner-operators of Bays Company and Denki Electric. The exhibit which showed the website set up for Dinki Electric used the terms "Denki" and "Dinki" and was strong evidence that the businesses were essentially the same company. The fact that Denki Electric paid Dinki Electric for subcontracted work in 2009, at a time when Dinki Electric had ceased operations and had no employees, shows that Smith was in control of both companies and was using the companies to hide labor and avoid his union obligations. Tim Bays, Bays' brother, was employed at Bays Electric, Dinki Electric and Bays Company. James Carlson and James Smith were employed by Premier Electric and Dinki Electric. James Carlson was also employed by Denki Electric.

Based upon this evidence, this court concludes that the relevant factors favor a finding that Dinki Electric and Bays Company are the alter egos of Bays Electric and that Dinki Electric and Denki Electric are the alter egos of Premier Electric. The companies shared substantially identical management, business purposes, operations, and supervision. *See Cent. Laborers' Pension Fund v. Ivy Concrete Founds., Inc.*, 2011 WL 4566444, at *6 (C.D.Ill.2011); *Anderson,* 774 F.Supp.2d

at 909–10. The companies had little if any equipment so that is not a significant factor. This court further concludes that customers in common is not a significant factor in this case because electrical contractors typically move from job to job and do not have a permanent customer base. In addition, this court concludes that differences in ownership are not dispositive under these circumstances. *See Sloan,* 902 F.2d at 597.

This court has carefully reviewed the case law cited by Defendants in support of their argument that Bays Electric and Premier Electric exercised their labor law right to go out of business and had no further obligation under the collective bargaining agreements and that Dinki Electric, Denki Electric and Bays Company were not alter egos of Bays Electric and Premier Electric. This court concludes that this argument is not persuasive. First of all, Bays Electric and Premier Electric did not go out of business. Instead, they continued to perform the same work, first as Dinki Electric, and then as Bays Company and Denki Electric. Also, the cases cited by Defendants are distinguishable.

In this case, Bays controlled operations and labor issues for Bays Electric and Smith controlled operations and labor issues for Premier Electric and both went on to control operations and labor issues at Dinki Electric. *Cf. Int'l Oil, Chemical & Atomic Workers, Local 7–517 v. Uno–Ven Co.,* 170 F.3d 779, 782 (7th Cir.1999); *Rabine,* 161 F.3d at 433; *Nat'l Labor Relations Bd. v. Bell Co., Inc.,* 561 F.2d 1264, 1268 (7th Cir.1977). In addition, this court concludes that Bays and Smith did not close their entire businesses and instead continued providing work as electrical contractors and, importantly, benefitted from the operation of Dinki Electric. *Cf. Bell Co.,* 561 F.2d at 1268. The evidence further shows that Bays went on to control operations and labor issues at Bays Com-

pany, and benefit from its operation, and Smith went on to control operations and labor issues at Denki Electric, and benefit from its operation. *Cf. Bell Co.,* 561 F.2d at 1268.

This court concludes, without hesitation, that Bays (operating as Bays Electric) and Smith (operating as Premier Electric) had the intent to avoid their collective bargaining agreement obligations when they controlled and managed Dinki Electric and then went on to operate Bays Company and Denki Electric. This court concludes that they seized on the opportunity to rid themselves of the union. *See Nat'l Labor Relations Bd. v. Tricor Prods., Inc.,* 636 F.2d 266, 270–71 (10th Cir.1980); *cf. Vacala Masonry,* 946 F.Supp. at 618 (under the circumstances there, the defendant "did not intend to avoid complying with the terms of a collective bargaining agreement it was obligated to follow"). This court concludes that this case, in contrast to *Vacala Masonry,* presents the "typical situation whereby a union company dissolves itself and reemerges as a non-union company in order to circumvent compliance with its obligations under a preexisting collective bargaining agreement." *Vacala Masonry,* 946 F.Supp. at 618. Bays Electric and Premier Electric cannot be allowed to evade their obligations by "simply going out of business and then reemerging as a different entity with the same business purpose." *See Vacala Masonry,* 946 F.Supp. at 619. In this case, Bays Electric and Premier Electric pretended to abandon their operations by transferring their operations to a sham entity, Dinki Electric. *See Uno–Ven Co.,* 170 F.3d at 783.

## 2. SUCCESSOR LIABILITY

In addition, this court concludes that the evidence presented supports a finding that Dinki Electric, Bays Company

and Denki Electric are also liable under a successor liability theory. The Seventh Circuit has recognized that the successor doctrine is broad in order to protect federal rights or effectuate federal policies. *Chicago Truck Drivers, Helpers & Warehouse Workers Union (Independent) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir.1995). In the ERISA context, successor liability exists "when: (1) there exists sufficient indicia of continuity between the two companies and (2) the successor firm had notice of its predecessor's liability." *Central Laborers' Pension Fund v. Coit, Inc.*, 2007 WL 3037253, at *4 (C.D.Ill.2007), *citing Upholsterers' Int'l Union Pension Fund*, 920 F.2d at 1329; *see also Tasemkin, Inc.*, 59 F.3d at 49.

 Defendants have cited *Fall River Dyeing & Finishing Corp. v. Nat'l Labor Relations Bd.*, 482 U.S. 27, 107 S.Ct. 2225, 96 L.Ed.2d 22 (1987) and insist that they cannot be found to be liable as successors because a majority of Bays Electric's employees were not employed by Dinki Electric and Bays Company and a majority of Premier Electric's employees were not employed by Dinki Electric and Denki Electric. This court does not find this argument persuasive. In *Fall River Dyeing*, the United States Supreme Court set out a number of factors which can be considered in determining whether there is "substantial continuity" between the two businesses. *Fall River Dyeing*, 482 U.S. at 43, 107 S.Ct. 2225. A determination that successor liability is appropriate must be based on the facts of each case. *See Tasemkin, Inc.*, 59 F.3d at 49. This court concludes that there is sufficient evidence of continuity in this case. *See Ivy Concrete Founds.*, 2011 WL 4566444, at *5 (companies performed same work and were managed by the same person). In addition, there is overwhelming evidence of notice of the predecessor's liability because there can be no doubt that Bays and Smith were aware of the union obligations of Bays Electric and Premier Electric when they continued the business as Dinki Electric, Bays Company and Denki Electric. Therefore, this court concludes that the factor asserted by Defendants is not dispositive in this case.

### 3. SINGLE EMPLOYER

 Moreover, this court concludes that the evidence presented supports a finding that Dinki Electric, Bays Company and Denki Electric are liable as single employers. *See Cent. Ill. Carpenters Health & Welfare Tr. Fund v. Struben*, 2009 WL 497393, at *20 (C.D.Ill.2009). This determination is based on four factors: "(1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." *Favia Elec. Co.*, 995 F.2d at 788; *Struben*, 2009 WL 497393, at *20. "No one factor is determinative: the decisionmaker must weigh the totality of the circumstances." *Struben*, 2009 WL 497393, at *20. This court concludes that the operations were interrelated, there was common management and centralized control of labor relations. Weighing the totality of the circumstances, this court concludes that these factors favor a finding that Premier Electric, Dinki Electric and Denki Electric were a single employer and that Bays Electric, Dinki Electric and Bays Company were a single employer. Therefore, Dinki Electric and Denki Electric are liable for the contribution obligations of Premier Electric and Dinki Electric and Bays Company are liable for the contribution obligations of Bays Electric.

### D. DAMAGES

In this case, the parties stipulated that all the individuals listed in the payroll audit were electricians who performed the work of electricians. The payroll audit

specifically lists the employees who performed covered work. Povse, who was qualified as an expert witness, calculated the damages based upon the records produced by Defendants. Stower testified regarding the calculation of interest and penalties based upon the terms of the applicable agreements. Defendants did not dispute the calculations at trial. Therefore, this court accepts Povse's and Stower's calculations of damages.

IT IS THEREFORE ORDERED THAT:

(1) This court rules in favor of Plaintiffs, NECA–IBEW Pension Trust Fund, NECA-IBEW Welfare Trust Fund and International Brotherhood of Electrical Workers Local Union No. 725, and against Defendants, Bays Electric, Inc., Premier Electrical Contractors, Inc., Dinki Electric, Inc., Bays Company, LLC and Denki Electric Corporation, Inc. on all claims. Judgment is entered in favor of Plaintiffs and against Defendants in the amount of $319,429.43 for contributions for the period from November 1, 2006, through December 31, 2008, $71,024.14 for penalties and $118,098.22 for interest, for a total judgment of $508,551.79.

(2) Plaintiffs are allowed thirty (30) days to file their petition for attorney's fees.

(3) This case is terminated.